SCHOOL CITY OF PERU ET AL. *v.* STATE
EX REL. YOUNGBLOOD.

[No. 26,663. Filed April 1, 1937. Rehearing denied
June 21, 1937.]

*C. Y. Andrews, L. O. Arnold, O. F. Rhodes, McHale, Arthur & Myers,* and *Adelbert W. Matt,* for appellants.

*Hurd J. Hurst, Benjamin F. Long, Joseph Tillett,* and *Russell J. Wildman,* for appellee.

TREMAIN, C. J.—The appellee filed this action in the court below, in a single paragraph, to mandate the

School City of Peru, together with the trustees thereof and one Crodian, then acting as superintendent of the schools, to recognize the appellee as the superintendent of the public schools of that city. It is alleged that the appellee had served continuously for eleven years last past as superintendent of such schools and was fully qualified as a tenure teacher with an indefinite contract pursuant to Chapter 97 of the Acts of 1927; that said indefinite contract was in full force and effect on February 23, 1934, and has never been canceled or terminated as provided by said Teacher Tenure Law; that on said date a majority of the board of trustees undertook to cancel said indefinite contract by a resolution which transferred him from the position of superintendent of the School City of Peru to that of principal of a school in said city; that at the same time the appellant Crodian was appointed as superintendent of said schools, to assume the duties thereof at the expiration of the current year; that in making said order, the trustees did not comply with the provisions of the Teacher Tenure Law in respect to the cancellation of the appellee's contract as superintendent; that at the time of the filing of the complaint herein, said Crodian was usurping the rights and prerogatives of the appellee as such superintendent, as such rights are established by his existing indefinite contract.

It is alleged that afterwards, on the 4th day of April, 1934, the appellee filed a complaint against the defendants, appellants in this court, to enjoin and restrain them from canceling or terminating his indefinite contract as superintendent of said schools; that appellee's theory was that the order transferring him from the position of superintendent to principal canceled his contract; that a temporary injunction was issued restraining the board of trustees from canceling said contract and from transferring the appellee from superintendent

to principal. The terms of the temporary injunction are set out in the appellee's complaint.

After this proceeding was had, two of the trustees of the School City of Peru, constituting a majority thereof, served written notice on the appellee that the board would consider the cancellation of his contract as a teacher in the public schools of that city. The appellee demanded of the board a copy of the reasons for the proposed cancellation of his contract. The same was furnished, and the board fixed August 31, 1934, as the date for a hearing upon said charges. A hearing was had at which all parties were present and represented by counsel. At the conclusion of the hearing, the matter was taken under advisement, and thereafter the trustees rendered their decision canceling the appellee's indefinite contract upon the ground of insubordination.

It is further alleged that thereafter the board refused to recognize the appellee as superintendent, but at all times recognized Crodian; that the board refused to pay to the appellee his salary as superintendent of schools; that he stood willing and ready to perform the duties of such position under his indefinite contract as superintendent thereof, and was qualified for such position; that the board would continue to permit said Crodian to act as superintendent unless they were mandated as prayed in the complaint; that the appellee had no adequate remedy at law; that the school board acted without authority, "arbitrarily, capriciously, unreasonably, wrongfully and unlawfully"; that such charges were preferred by the board and not by a third party; that the board acted as the judges of its own charges and undertook to cancel appellee's indefinite contract without proof or authority and for personal and political reasons; that the charges were not based upon any cause enumerated in the Teacher Tenure Law providing for the cancellation of such contract, and were insuffi-

cient to establish insubordination as defined by said statute; that one of the trustees of the school board was elected to that position upon the express understanding and announced intention that he would proceed to oust the appellee as superintendent, and for that reason he could not legally participate in hearing the charges against appellee; that by reason of all these facts, the appellee prays for a mandate requiring appellants to recognize him under his "indefinite teacher's contract," and restore to him his position as superintendent, and that said Crodian be ousted as such superintendent; that the board be mandated to pay his salary as such superintendent.

The written charges filed against the appellee are in substance as follows: That he willfully refused to obey the school laws of the State of Indiana, and the rules prescribed for the government of the city schools of the city of Peru; that he willfully refused to obey the order of the school board to teach as principal, and filed an action in the Miami Circuit Court to enjoin the school board from making such transfer; that he filed such action for the purpose of mandating and coercing the board to modify and change the orders thereof; that he employed lawyers to incite strife among the citizens of the city, to promote public turmoil, to resist the orders of the board of school trustees, and for the purpose of promoting his own selfish interest, contrary to the best interests of the school; that he encouraged and solicited mass meetings for the purpose and object of coercing the board to recognize him as superintendent; that he made false and untrue statements in public and in the press concerning the schools, and attempted to excite public prejudice by false and dishonest statements; that he attempted to procure the resignation of competent teachers in said schools, and attempted to cause to be procured, for a money consideration, positions of

teachers in said schools; that he discriminated and acted unfairly in procuring teacher permits from the state board of education; that he unreasonably criticized and condemned teachers and others employed in the schools, and in effect broke down the morale of teachers and pupils.

Issues were formed upon the complaint by the filing of various motions, demurrers, and answers. The cause was submitted to the court, and judgment rendered in favor of the appellee, mandating the board to reinstate him as superintendent and for judgment in the sum of $3,892.50.

Upon the rendition of the judgment, motions were filed to modify, and in arrest of judgment, and for a new trial, all of which were overruled with exceptions. Upon the trial in the circuit court, a transcript of the evidence heard by the board upon the proceedings to remove the appellee as a tenure teacher was introduced in evidence. Witnesses were called and examined, most of whom testified before the board. The evidence given at the trial in court was similar to that given before the board.

On appeal, the appellants seriously contend that the complaint states two separate and distinct causes of action. The first one, that the appellants transferred the appellee from the position of school superintendent to the position of school principal, contrary to law. The second cause of action alleged in the complaint is that after the appellee refused to obey the order of transfer, the appellants filed charges against him for insubordination, and found him guilty and adjudged that his contract be canceled. The appellants say that these two causes are separate and distinct in point of time. The first is based upon facts occurring prior to July 31, 1934, and the latter is based upon facts occurring afterwards. They claim that the facts alleged

in the first cause of action did not constitute a cancellation of the appellee's contract, but were in recognition thereof; that facts alleged in the second specification are based upon charges demanding the "cancellation of his contract." The appellee, however, in answer to the appellants says that the complaint as a whole is intended to and does relate to the proceedings had in relation to the cancellation of appellee's contract, and claims that the transfer of the appellee from the position of school superintendent to school principal, amounted to such cancellation. Whether the complaint should be separated into paragraphs was a question largely in the discretion of the court, and the ruling thereon does not constitute reversible error.

Whether the separate specifications of the complaint, or the complaint as a whole, shall be considered as demurrable, is unimportant in view of the holding of this court upon the main issue in the case. It is not questioned that the appellee had taught for a sufficient time in the public schools of the city of Peru to establish him as a tenure teacher under Chapter 97, Acts 1927, nor that the proceedings had by the school board upon the charges filed against the appellee were in conformity to that statute.

The first question confronting the court is the one pertaining to the right of the board to transfer appellee from the position of city superintendent to principal of a school in said city at a smaller salary. The Tenure Act is entitled:

"An Act defining teachers and permanent teachers, providing for their employment and release, and defining, and providing for the making and cancelling of, indefinite contracts."

There is nothing in the Act specifying a particular position for any teacher. The Act provides that a teacher who has been employed continuously for five

successive years, and thereafter enters into a teacher contract for further service, shall become a permanent teacher in such corporation. It does not specify that the teacher must hold the same position, but only that he is a permanent teacher in the school corporation. The status of a teacher extends to and includes superintendent as defined by the statute, and he is given the privileges of a teacher. The rights and privileges are controlled by the same law, and his status is the same as that of a permanent teacher under an indefinite contract.

The appellee claims under his statutory contract. His action is not founded upon any written instrument. He has not pointed to any statute which requires the school board to maintain him in the same position occupied and held at the time he became a tenure teacher. This particular question has not been presented heretofore to this court. However, it is clear from a reading of the statute that the board of school trustees is at all times possessed of full discretionary power to organize and control the schools of a city, charged expressly with the management of school affairs, the levying of taxes to produce funds for the support of the schools, the reduction or increase of the number of teachers as necessity might require, and many other duties. It necessarily follows that there is reserved to the board of trustees full authority to either promote or demote any teacher in the school in the absence of a specific statutory restriction.

In *Boody* v. *School Committee etc.* (1931), 276 Mass. 134, 177 N. E. 78, a somewhat similar question was before the court, based upon a statute similar to the statute of Indiana. In that case a teacher was demoted from supervising principal to teacher. He sought to mandate the school board to restore him to his former position, which paid a higher salary. The Massachusetts statute

provided that such questions should be determined by a two-thirds vote of the school committee, in order to affect tenure teachers. It is pointed out that the statute itself does not embrace the question of reduction of salary, nor does it contain any provisions in regard to change of duties. Since there were no restrictions in the statute, it was held that a majority vote of the school committee was sufficient to change the duties of a teacher, on tenure, at discretion, from those of principal to giving instruction as a teacher. The same may be said of the Indiana statute.

A similar case arose in California in *Loehr* v. *Board of Education* (1910), 12 Cal. App. 671, 108 Pac. 325. The question was presented as to the powers of the board of education to transfer and assign teachers. It was held that in the absence of positive restriction, the board had wide discretion in the employment and dismissal of teachers, or in the transfer or assignment of them. The question there involved was the transfer of a teacher from one class to another class with a lower salary. That court held that there was nothing in that statute which placed any limitation upon the power of the board of education to transfer a teacher from one class to another, or from school to school. That court used language as follows:

> " 'The public schools', as was pertinently observed in *Bates* v. *Board of Education, supra,* 'were not created, nor are they supported, for the benefit of teachers therein, . . . but for the benefit of the pupils and the resulting benefit to their parents and the community at large'."

It was there held that the transfer of the teacher to a lower grade was permissible.

It is the view of this court that the transfer of the appellee from the position of school superintendent to principal of a south side Peru school did not have the

effect of canceling his contract. On the contrary, it was a recognition of the existence of his contract. The evidence, at both the hearing before the board and in the Circuit Court, is uncontradicted upon the subject of the appellee's refusal to accept the principalship of the south side school. He testified that he told the board he would not accept that position. In addition to this, he filed an action to enjoin the board from transferring him, and secured a temporary injunction. Thereafter, when the school board preferred charges against appellee for the cancellation of his contract, he apparently dismissed the injunction suit, and the injunction was not made permanent.

Among the charges against the appellee is one based upon the alleged specific act of insubordination, appellee's refusal to accept the position of principal of the south side school, assigned to him by the board of trustees. Insubordination is one of the grounds specified by the statute for the removal of a permanent teacher. If his refusal to accept that assignment as directed by the board amounts to insubordination, then this judgment must be reversed on that ground, if not for other grounds assigned.

In addition to the foreging facts there was evidence before the board that the appellee had counseled and abetted strife in the school and among the patrons; that in violation of law, he had shown partiality in permitting one teacher to teach in the schools without a certificate or license; that he had lowered other teachers' success grades solely because he considered that they were not friendly to him. This he admitted in his own testimony.

Also, there was evidence given by one teacher that the appellee had asked him to pay the sum of $400 to another teacher to secure a teaching position. The teacher who testified to this fact stated that he told the

appellee that he would not buy a teaching position. On the other hand, the appellee testified he only intended to have the applicant make a loan to the other teacher in order to pay expenses while in school; that the appellee himself afterwards made the loan. The board of school trustees, in passing upon this particular question, would be justified in construing that testimony as understood by the teacher. When all of these facts are considered in connection with the appellee's refusal to accept the position assigned to him by the board, it clearly appears that the board was justified in holding that the appellee was guilty of insubordination.

With that fact established, what authority did the circuit court possess to review, set aside, or mandate the board to reinstate the appellee as superintendent, pay to him his salary, and to remove the acting superintendent? This court has held that in cases where the school board has proceeded according to statutory provisions, in good faith and upon sufficient proof, and has entered an order as made in the case at bar, the courts cannot substitute their own judgment for the judgment of the board.

In *School City of Elwood* v. *State, ex rel.* (1932), 203 Ind. 626, 180 N. E. 471, 81 A. L. R. 1027, at page 631, this court, speaking through Martin, Judge, said:

"If a school board dismisses a teacher for a cause named in the statute, such action is conclusive and is not subject to review by the courts, unless the board in taking the action acted in bad faith, arbitrarily, corruptly, fraudulently or in gross abuse of its discretion." Citing authorities.

In *Arburn* v. *Hunt* (1934), 207 Ind. 61, 191 N. E. 148, at page 64, where a similar question was under consideration, this court, through Fansler, Judge, said:

"Appellant, by entering into the contract, must be deemed to have agreed that it might be cancelled, as provided in §2 of the Act, and in the light of his

contract he cannot be heard to say that he is entitled to a hearing before any other body or persons than that expressly provided for in the statute."

There are two cases entitled *Stiver* v. *State ex rel. Kent* (1937), 211 Ind. 370, 380, 1 N. E. (2d) at pages 592 and 1006 respectively, both written by Treanor, Judge. In the first case, at page 375, the court said:

"So, where a permanent teacher's indefinite contract can be canceled by a trustee only for cause, after a hearing, if requested, a court in an action for mandate may set aside such cancellation if it appears that the hearing, in fact, was not a fair hearing, or if there was no evidence to support a finding that a legal cause for cancellation existed. But it is true, as appellants insist, that in such action for mandate the trial court cannot control a school township trustee's exercise of discretion in reaching his decision, after a fair hearing, upon evidence sufficient to constitute legal cause for cancellation."

In the other Stiver case, on page 385, the same question was under consideration. The court said:

"In the light of the foreging discussion and principles, we are compelled to conclude that the decision of the trial court was contrary to law. As already stated, the hearing conformed to all the procedural requirements of the Teachers' Tenure Law and there was substantial evidence tending to establish facts which would show the existence of legal cause for dismissal. It is true, as pointed out by appellee, that 'the evidence relied upon by appellants consists almost entirely of the testimony of the Township Trustee, before whom the hearing for discharge was conducted, and the County Superintendent, to whom the appeal from the Trustee had to be taken.' But the probative force of this evidence was such that the trial court could not say as a matter of law that it was not sufficient to support a conclusion that the relator in fact had neglected his duties and had failed to cooperate with school officials. Appellee states in his brief that he does not contend that his dismissal came about as a result of fraud. He does claim, however, that he was

arbitrarily dismissed and that there was a gross abuse of discretion on the part of the school authorities. But in the face of substantial evidence tending to establish the existence of legal cause for dismissal, a court cannot say as a matter of law that there was an abuse of discretion. It was the duty of the trial court, while examining the evidence introduced in the hearing before the trustee, not to consider any supposed interest of the trustee or county superintendent in securing the cancellation of relator's contract."

The principle announced in these cases applies to administrative boards generally, such as the board of public safety, public service commission, and other similar boards. It has been held time and again that the court will not, by mandate, undertake to control the exercise of judicial powers or discretion exercised by inferior administrative tribunals, and mandate will not lie to control the action of such boards merely because they may have committed an error in the trial of a matter of which they had jurisdiction. In other words, the courts will not undertake to correct errors of judgment made by the board during a hearing of a matter before it. The court cannot control the decisions of these boards, as their decisions rest upon sound discretion. *State ex rel. Felthoff* v. *Richards* (1932), 203 Ind. 637, 180 N. E. 596.

The appellee has made complaint upon the ground that the charges preferred against him were made by the board of trustees; that one member of the board had stated that he had been elected for the purpose of getting rid of the appellee, that the appellee had been there too long. These reasons are wholly insufficient to give the court jurisdiction, nor do they amount to charges of fraud. The statute does not specify by whom the charges shall be filed. Such statements do not show that the board acted capriciously, arbitrarily, or illegally.

In *State, ex rel.* v. *Davies* (1926), 198 Ind. 30, 152 N. E. 174, the court had under consideration the question of the removal of a policeman by the board of public safety. It was proved that individual members of the board had made statements that they believed the defendant was guilty, and that he should be dismissed. It was held that such statments did not disqualify the members from serving upon the board created by statute to hear the cause, and could not be considered in evidence in a suit to mandate.

The appellee was afforded a hearing before the board in all respects as required by statute. Under the circumstances here presented, the jurisdiction of the trial court was limited to a consideration of whether or not there was substantial evidence before the board to support the charges against the appellee. As heretofore pointed out, the evidence was sufficient to sustain the finding made by the board. The trial court could not say as a matter of law that the board abused its discretion. Under such circumstances, the trial court was without jurisdiction to impeach the motives of the board. *State ex rel. Felthoff* v. *Richards, supra; State ex rel* v. *Davies, supra; Stiver* v. *State ex rel. Kent, supra.*

The judgment of the lower court is reversed.

Treanor, J., dissents with opinion.

## ON PETITION FOR REHEARING.

TREMAIN, J.—In his petition for a rehearing the appellee insists that no question is presented to this court for the reason that the appellants filed a motion in arrest of judgment prior to filing the motion for a new trial. Authorities are cited to sustain that proposition. Watson's Revision of Works Practice and Forms, Vol. 2, §1907, collects many authorities sustaining this proposition, and then says:

"So long as this rule stands, a motion in arrest of judgment should not be made until after a motion for a new trial, if it is desired to make one, but the rule should be changed, as there is no more reason why filing a motion in arrest of judgment should preclude the filing of a motion for a new trial than there is that a motion for a *venire do novo* or a motion for judgment on the answers to interrogatories should have that effect. The rule was established by the common law and never should have been applied after the adoption of the code."

However, the case at bar does not present a situation where this rule is applicable. The record in this case discloses that on the same day three motions were filed in the lower court: (1) A motion to modify the findings of the court, (2) a motion in arrest of judgment, and (3) a motion for a new trial. After argument of counsel and consideration, these motions were overruled simultaneously. Since the motions were filed together and ruled upon at the same time, this court will indulge in the presumption that the trial court followed the rule of practice long in force in this state, and considered the motion in arrest of judgment as having been filed after the motion for a new trial. It has been held that where the two motions are filed and pending at the same time, and, there being nothing to the contrary, it will be presumed that they were ruled upon in their proper order. Elliott's General Practice, Vol. 2, §995; *Habersham* v. *Wetter* (1877), 59 Ga. 11; *Pope* v. *Latham* (1838), 1 Ark. 66; *Jewell* v. *Blandford* (1838), 7 Dana (Ky.) 473; *Water, etc., Co.* v. *Gildersleeve* (1888), 4 N. Mex. (Gild.) 171, 16 Pac. 278; *Farmers' Bank* v. *Bayliss* (1867), 41 Mo. 274.

The rule that the filing of a motion in arrest of judgment precludes the filing of a motion for a new trial is technical. If the appellee is to receive any advantage from it, the burden is upon him to establish affirmatively by the record that it preceded

the motion for a new trial. The appellee does not present a record affirmatively disclosing a situation upon which he relies.

Other questions presented in the motion for a rehearing merely review the questions decided in the original opinion. After a careful reconsideration of these questions, the court is of the opinion that the motion for a rehearing should be and is overruled.

Treanor, J. dissents.

### DISSENTING OPINION.

TREANOR, J.—I must respectfully dissent from the reasoning and conclusion of the majority of the court. In my judgment the majority is in error in holding: (1) that a school board has the legal power to compel the superintendent of schools to relinquish his position as superintendent with a salary of $3,982.50 and to accept in lieu thereof a position as principal of a grade school at a salary of $1,739.34; and (2) that the jurisdiction of the trial court was limited to a consideration as to whether or not there was sufficient evidence before the board to support the charges against appellee.

Assuming that contract has any legal significance whatever under the Tenure Act I must confess my utter inability to follow the reasoning upon which is based the first holding to which I have referred. In Section 1 of the Tenure Act[1] the following provisions are found:

"Be it enacted by the general assembly of the State of Indiana, That any person who has served or who shall serve under contract as a teacher in any school corporation in the State of Indiana for five or more successive years, and who shall hereafter enter into a teacher's contract for further service with such corporation, shall thereupon become a permanent teacher of such school corporation. The term 'teacher' as used in this section shall mean and include licensed public school teach-

---

1. Acts, 1927, Ch. 97, p. 259,

ers, supervisors and principals of all public school corporations, and licensed assistant superintendents and superintendents of school cities and towns. Upon the expiration of any contract between such school corporation and a permanent teacher, such contract shall be deemed to continue in effect for an indefinite period and shall be known as an indefinite contract. Such an indefinite contract shall remain in force unless succeeded by a new contract signed by both parties or unless it shall be cancelled as provided in section 2 of this act: . . . and, Provided, further, That teachers' contracts may contain provisions for the fixing of the amount of annual compensation from year to year by a salary schedule adopted by the school corporation and such schedule shall be deemed to be a part of such contract; and, Provided, further That such schedule may be changed by such school corporation on or before May 1st of any year, such changes to become effective at the beginning of the following school year; Provided, That all teachers affected by such changes shall be furnished with printed copies of such changed schedule within thirty days after its adoption."

If the ordinary meaning is to be given to the language used by the General Assembly, we are bound to recognize that the legislative intent was to continue in legal force the last contract formally entered into between a teacher and a school corporation until such contract should be "succeeded by a new contract signed by both parties, or unless it should be cancelled as provided for in section 2 of this act." It would seem to be mentally impossible to conceive of a contract's being continued in force without the essential terms thereof being legally binding upon the parties to the contract. And the only contract which had been executed by the relator and the school corporation, and the one which was the subject of the cancellation proceeding, expressly provided that the relator was employed as superintendent of the public schools of the School City of Peru at a definite salary. It is true, as stated in the ma-

jority opinion, that "there is nothing in the act specifying a particular position for any teacher;" but we must assume that the General Assembly enacted the Tenure Act with the knowledge that the contract, which the language of the Act declared would become an indefinite contract and continue in force until superseded or cancelled, would contain the essentials of a contract.

In *Fairplay School Township* v. *O'Neal*[2] it was stated (p. 96) "... that a teacher can not recover from the school corporation for the breach of an executory agreement unless it is so full and definite as to be capable of specific enforcement." It is the law in Indiana that no teacher's contract is enforceable unless it is in writing. It is not conceivable under the law of Indiana that a contract could be enforced by one claiming to be the superintendent of the public schools of a school corporation if the contract did not expressly provide that such person was being employed as superintendent of the schools and for a stated, or determinable, salary. And in *Atkins* v. *Van Buren School Township*[3] it was held that there was no error in sustaining a demurrecr to a complaint to recover damages for the breach of a contract when the contract did not designate the number of weeks which would constitute the school term, and when the writing contained no agreement that the blanks should thereafter be filled "in accordance with any defined or definable rule or ascertainable facts." Neither is it conceivable that one who has signed a contract as teacher in the schools of the corporation or as principal of a grade school, at a salary of $1,739.34 would be permitted, in a suit against the school corporation, to establish by parole evidence that he, in fact, had been employed to act as superintendent at a salary of $3,982.50. For, in view of the strictness of the rule in Indiana requiring teach-

2. (1890), 127 Ind. 95, 26 N. E. 686.
3. (1881), 77 Ind. 447.

er's contracts to be in writing, a court would be compelled to hold that the essential elements of the contract must be in writing in order to be enforced. So in the instant case the provisions that the relator should act as superintendent of the public schools of the School City of Peru and that his salary should be $3,982.50 were essential elements of his contract and were continued in full force and effect by the provisions of the Tenure Act. The so-called "demotion" was an effort to cancel the contract of the relator as superintendent of the schools of the Peru School Corporation.

The language quoted above from Section 1 of the Tenure Act authorizes the adjustment of salaries "from year to year by a salary schedule." If the salaries of the individual teachers under the indefinite contract can be changed arbitrarily by the school board each year the authorization of the adoption of salary schedules is surplusage. It surely is significant that by the terms of the Act school corporations are required to furnish teachers with printed copies of proposed changes in the salary schedules, and that changes in salary schedules must be made on or before May 1 of any year, and are not effective until the following term of school.

The majority opinion states that "the status of a teacher extends to and includes superintendent as defined by the statute, and he is given the privileges of a teacher." Apparently the foregoing statement is based upon the following language found in Section 1 of the Tenure Act: "The term 'teacher' as used in this section shall mean and include licensed public school teachers, supervisors and principals of all public school corporations, and licensed assistant superintendents and superintendents of school cities and towns." The purpose of the foregoing provision is to avoid repetition of the words licensed public school teachers, supervisors and principals and licensed assistant superintendents and

superintendents. There is no justification for reading into the provision a legislative intent to destroy the essential elements of the contracts executed by school corporations with supervising and administrative employees. If the foregoing provision had not been used, and if only the term "teacher" had been used, it reasonably could be urged that supervising and administrative employees of the public school system would not be protected by the tenure provision of the Act. Such a contention would be supported by the well known fact, of which courts have judicial knowledge, that both in law and in administrative practice, superintendents, supervisors, principals and teachers constitute distinct classes of public school employees.

The majority opinion makes the following statement: "The appellee claims under his statutory contract. His action is not founded upon any written instrument. He has not pointed to any statute which requires the school board to maintain him in the same position occupied and held at the time he became a tenure teacher." The foregoing language can have no meaning unless the last written contract which was executed between the school corporation of the City of Peru and the relator had ceased to be a contract. But this can not be true in the face of the express provisions of the Tenure Act that "such contract shall be deemed to continue in effect for an indefinite period and shall be known as an indefinite contract." It is a statutory contract only in the sense that by force of the statute it is continued in effect for an indefinite period. It is none the less a written contract of the parties. There was no legislative intent to abolish the necessity of a written contract by the enactment of a Teachers' Tenure Act. In fact the act contains the following provision, Section 6: "This act shall be construed as supplementary to an act of the general assembly, page 195, act 1921, entitled 'An act con-

cerning teachers' contracts and providing for the repeal of conflicting laws'." And in the case of *Board of School Commissioners of City of Indianapolis et al.* v. *State ex rel. Wolfolk*[4] this court, speaking through Tremain, J. explained in detail that "All of the Acts of 1899, 1921, and 1933 must be construed together as one law, defining the nature and terms of the contract to be executed by the teacher and school corporation. The Acts of 1921 and 1933 took nothing away from the Act of 1899, but added further conditions thereto."

In the case of *State ex rel. Black* v. *Board of School Commissioners*,[5] the following language of Section 1 of the Tenure Act was construed by this court (p. 586):

"Upon the expiration of *any* contract between such school corporation and a permanent teacher, *such* contract shall be deemed to continue in effect for an indefinite period and shall be known as an indefinite contract. Such an indefinite contract shall remain in force unless succeeded by a new contract signed by both parties unless it shall be cancelled as provided in section 2 of this act."

In the foregoing case appellee argued that under this provision of the statute, relatrix' indefinite contract was succeeded by a new contract and thereafter she was a permanent teacher with a definite contract. In disposing of this contention this court commented as follows (p. 586):

"It is difficult to follow appellee's argument on this point. If the new contract, herein, was as appellee contends, a definite contract of employment, fixing the beginning and ending of all contractual relation between the parties, then relatrix was not in fact a permanent teacher. Relatrix would be in the anomalous situation of having a permanent tenure with appellee corporation but with no contract defining their respective rights . . . It seems clear that by the above provisions of the statute

4. (1936), 209 Ind. 498, 199 N. E. 569.
5. (1932), 205 Ind. 582, 187 N. E. 392.

that when relatrix had taught for appellee corporation for five (or more) successive years and thereafter entered into a teacher's contract for further services she became a permanent teacher of appellee corporation, and *that* contract became the 'indefinite contract,' and remained in full force and effect until succeeded by a new contract or cancelled as provided in §2 of said act. We do not think that it was the intention of the legislature, by the above provision, to lose to both the state (school corporation) and to the teacher the rights and advantages obtained by them under this statute, by reason of the fact that the proper school officers and the teacher entered into a new contract for the further services of said teacher."

In the case of *Arburn* v. *Hunt et al.*[6] Arburn, a school teacher, brought his action to enjoin proceedings by the board of trustees of a school corporation for the cancellation of his tenure contract. As indicated in the opinion this court believed that the teacher's remedy was the one provided in the Tenure Act, and that he was not entitled to an injunction to restrain the school board from taking action in accordance with the provisions in the statute to cancel the contract of the teacher. The following statements in the opinion leave no doubt that that this court assumed that a permanent teacher continued to serve under a contract which included all the provisions of the Tenure Act (p. 64) :

"The source of authority for the so-called permanent teacher's contract is the statute. The legislature need not have provided for such contracts, but, since it did so provide, the entire statute, with all of its provisions, must be read into and considered as a part of the contract. Appellant, by entering into the contract, must be deemed to have agreed that it might be cancelled, as provided in §2 of the Act, and in the light of his contract he cannot be heard to say that he is entitled to a hearing before any other body or persons than that expressly provided for in the statute."

6. (1934), 207 Ind. 61, 191 N. E. 148.

In my opinion the plain legislative intent and purpose as expressed in the Teachers' Tenure Act, was to continue in force the essential elements of the contract entered into between a school corporation and the other contracting party. The term of the contract which designates the salary is an essential element of the contract and continues in force unless changed by agreement of the parties or through the adoption of a salary schedule, which by the terms of the Tenure Act may be varied in accordance with the procedure set out in the act. Furthermore, I think that the term of the contract between a school corporation and another party which defines the position of the other party as that of superintendent of schools of the corporation is an essential term of the contract, and that a so-called "demotion" from the position of superintendent to that of a ward principal or a regular teaching position would constitute a repudiation of the contract by the school corporation. If a person were serving as a manager of a large department store under a contract calling for $3,982.50 a year it hardly could be contended that the employer could perform his contract by compelling the manager to accept a position as clerk at $1,739.34 a year. Such action would clearly constitute a repudiation of the contract.

The foregoing question has been before the Supreme Court of California under provisions of a Tenure Act which makes the California Court's decision precisely in point in the instant case. In the case of *Klein* v. *Board of Education*[7] the question presented was whether a school board had the power to "demote" a school *teacher* from the position of vice-principal to a regular teaching position with a consequent reduction in compensation. The following excerpt from the opinion of the Supreme

7. (1934), 1 Cal. (2d) 706, 37 Pac. (2d) 74.

Court of California can not be improved upon as a statement of a rational construction of our own statute (p. 710):

> "At the time of the arbitrary demotion of the respondent herein, she had been serving for approximately ten years as vice principal *teacher* of elementary schools in the city and county of San Francisco. To so arbitrarily reduce her status from that of vice principal to that of teacher, with a consequent reduction in compensation, served to violate and destroy her right of tenure as such vice principal teacher. We cannot accept appellants' conclusion that respondent was not reduced in 'grade' because of her retention as a teacher in the elementary schools. In *Cullen* v. *Board of Education,* 126 Cal. App. 510, 15 P. (2d) 227, 16 P. (2d) 272, wherein we denied a hearing, it is held that 'this right of tenure is a right which the teacher enjoys to continue in the position or positions to which he has become elected under the statute—i. e., in a position or positions of a *rank* and *grade* equivalent to that occupied for the probationary period and to which the teacher has thus become 'elected' under the statute.' (Italics added.) To the same effect see *Anderson* v. *Board of Education, supra,* wherein it is declared that 'the tenure, therefore, runs to a position of employment, *or service,* of equal grade *and rank* to that to which the statutory classification has applied, and such is the settled rule of the Kennedy case.'"

*Mitchell* v. *Board of Trustees,*[8] decided some time after the foregoing case, required a consideration of the extent of the discretion of a school board to make changes in the position of a tenure teacher. The California District Court of Appeal, Fourth District, decided that the trial court had gone too far in ordering restoration of the petitioner to a particular school and to a particular place in the school district. The California Court's discussion of this point is appropriate to

---

8. (1935), 5 Cal. App. (2d) 64, 42 Pac. (2d) 397.

the "demotion" contention in the instant case. I quote as follows (p. 68):

"In *Cullen* v. *Board of Education,* 126 Cal. App. 510, 15 P. (2d) 227, 16 P. (2d) 272, the court said: 'But we should not be understood as holding that this right of tenure guarantees that a teacher must be retained in any particular school or assigned to teach any particular class or classes. This right of tenure is a right which the teacher enjoys to continue in the position or positions to which he has become elected under the statute—i. e., in a position or positions of a rank and grade equivalent to that occupied for the probationary period and to which the teacher has thus become "elected" under the statute.'

"There is nothing in the tenure of law which interfers with the general power and right of a board of education to assign teachers to particular classes and to particular schools in accordance with its judgment and desire reasonably exercised. A teacher, in acquiring a permanent status, does not thereby acquire a vested right to teach any certain class or in any certain school. While a board would have no right to evade the plain meaning of the tenure act by assigning a teacher to a class of work for which he was not qualified, for the purpose of compelling his resignation, it has the power to reasonably change assignments with respect to a permanent teacher so long as the work assigned is of a rank and grade equivalent to that by which the permanent status was acquired and so long as the assignment is one for which the teacher in question is qualified. We think the order here in question should be so modified as to permit the respondent board to assign the petitioner to any class which he was qualified to teach and of a rank and grade similar to the work done by him during his probationary period, whether or not such a class is one in a commercial subject."

The language and the decision of the District Court of Appeal, of California, Fourth District, in the case of *Loehr* v. *Board of Education*[9] is relied upon in the

9. (1910), 12 Cal. App. 671, 108 Pac. 325.

majority opinion to support the power of the school board in the instant case to "demote" relator. A careful reading of the opinion in that case hardly justifies its use for that purpose. The opinion pointed out that the school law of California recognizes three grades or classes of teachers, namely, primary, grammar and high school grades. The "demotion" involved in the California case was a transfer from "A first grade" in one public school to "B third grade" in another school. Both of these grades were in the statutory grade designated as primary, and the Supreme Court concluded that the board of education had the right, in its discretion, to make the transfer in question.

There may be reasonable differences of opinion as to the soundness of the policy of continuing the last contract of a *teacher* indefinitely with the consequent restriction upon the discretion of school officials. But the General Assembly enacted, as plainly as our language will permit, that such contract should continue in effect unless and until changed or cancelled in accordance with other provisions of the act. The General Assembly has the power to so provide this method of giving effect to the policy of permanency of positions based upon merit, and the soundness of the general policy, as well as the expediency of the method, is a legislative matter. Since, as stated in the majority opinion, the act does not specify "a particular position for any teacher", I think that school trustees have the power "to reasonably change assignments with respect to a permanent teacher so long as the work assigned is of a rank and grade equivalent to that by which the permanent status was acquired and so long as the assignment is one for which the teacher in question is qualified." (*Mitchell* v. *Board of Trustees, supra.*) But to construe the Tenure Act to permit unrestricted changes of positions without reference to the grade or rank of the position occupied

during the probationary period, and with respect to which the parties executed the contract which the statute continues as the indefinite contract, seems to the writer to be nothing less than a bald judicial amendment of the statute, impairing, if not defeating, the clear policy and purpose of the Tenure Act.

The second holding of the court, as set out in the opinion, involves implications which affect the question of the jurisdiction of courts to review decisions of administrative bodies in general, as well as those of school boards in particular. The substance of the holding is that if there is any evidence to support the decision of the administrative tribunal, no court has jurisdiction to set aside the holding, even though there is evidence available to show that the hearing was in fact not a fair hearing, and that the decision of the administrative tribunal was made arbitrarily and without reference to the merits of the question before it. By a strange misreading of Indiana cases the opinion cites them as authority for its holding. Most of these cases qualify the statement that action of an administrative board is conclusive by some such statement as: "Unless the board in taking the action acted in bad faith, arbitrarily, corruptly, fraudulently, or in gross abuse of its discretion."[10] In the case of *Stiver* v. *State ex rel. Kent*[11] this court expressly said that (p. 375) "... a court in an action for mandate may set aside such cancellation if it appears that the hearing, in fact, was not a fair hearing, or if there was no evidence to support a finding that a legal cause for cancellation existed." In *Stiver et al.* v. *State ex rel. Kent*,[12] it was expressly stated that (p. 389) "... It would have been proper for the trial court to consider independent evidence for the purpose of determining whether the hearing was, in fact, a fair hearing." In an

10. (1932), 203 Ind. 626, 180 N. E. 471.
11. (1937), 211 Ind. Sup. 370, 1 N. E. (2d) 592.
12. (1937), 211 Ind. Sup. 380, 1 N. E. (2d) 1006.

opinion supporting our action in overruling a petition for rehearing which was filed April 1, 1937, in the case of *Stiver, Trustee* v. *State ex rel. John J. Kent, No. 26471,* reported in 7 N. E. (2d) 181, it was expressly stated that in our decision in that case it was not intended to overrule "the line of decisions holding that if school authorities in dismissing a teacher acted in bad faith, arbitrarily, fraudulently, or in gross abuse of their discretion, their action is reviewable by the courts." And it was further stated that the trial court was not free to draw the inference that the decisions of the trustee and county superintendent were arbitrary or that the hearing was unfair simply from the fact that most of the evidence before the trustee was the testimony of the trustee and the county superintendent; but it was also clearly expressed in the opinion that the trial court had jurisdiction to hear evidence for the purpose of determining whether the hearing before the trustee, though regular in form, was in truth a fair hearing. The trial court cannot hear evidence merely for the purpose of challenging the weight of the evidence which has been introduced before the township trustee or board of trustees; but I am unable to find any decision in this state which holds, or even intimates, that the trial court does not have jurisdiction to hear evidence for the purpose of determining whether the hearing before a trustee or board of trustees was in fact a fair hearing.

In the instant case the evidence before the trial court was ample to support the finding that the defendants, in cancelling the indefinite contract of relator, "were acting wrongfully, unlawfully, arbitrarily and capriciously without good or valid reasons and for personal reasons." Such action was a fraud upon the law, and in my opinion the trial court, justifiably relying upon the declaration of this court, correctly held that the act of cancellation of relator's contract was void and of no

legal effect. It follows that it was the official duty of defendants, resulting from their respective offices, to reinstate relator and the trial court properly entered judgment to that effect.

There is additional reason for affirming the judgment of the trial court. The record shows that a motion in arrest of judgment was made before the motion for a new trial, and that the motion in arrest of judgment was ruled upon before there was a ruling upon the motion for a new trial. Under the authority of *Conant* v. *First National Bank*[13] the right to file a motion for a new trial was waived, and it is clear from the record that there was no error in overruling the motion in arrest of judgment.

In my opinion the judgment of the Circuit Court of Cass County should be affirmed.

13. (1917), 186 Ind. 569, 572, 117 N. E. 607.