**SALEM COMMUNITY SCHOOL CORPO-
RATION et al., Appellants
(Defendants Below),**

v.

**Melvin RICHMAN, Appellee
(Plaintiff Below).**

No. 2–876–A–282.

Court of Appeals of Indiana,
Second District.

June 17, 1980.

Rehearing Denied Aug. 27, 1980.

Slagle & Shirey, Wayne A. Shirey, Richard A. Dailey, Muncie, Howard J. DeTrude, Jr., Peter G. Tamulonis, Kightlinger, Young, Gray & DeTrude, Indianapolis, for appellants.

Robert W. Rund, Indianapolis, for amicus curiae, Indiana School Boards Ass'n.

William M. Evans, Bose, McKinney & Evans, Indianapolis, Frank C. Massey, Muncie, for appellee.

BUCHANAN, Chief Judge.

## STATEMENT OF THE CASE

This is a consolidated appeal from an action brought by Melvin Richman (Richman) against the Salem Community School Corporation (School Board) for breach of his employment contract, the School Board claiming adequate notice was given of termination of his employment as Superintendent and Richman claiming damages awarded were inadequate.

We affirm in part and reverse in part.

## FACTS

The trial court found, *inter alia*, these facts:

1. That plaintiff is now and at all times involved in this litigation has been a permanent-tenure teacher licensed in Social Studies Option I, Health Education and Driver Training, also holding lifetime licenses as principal and superintendent.

2. That plaintiff was first employed as a teacher by defendant school in 1954 and remained with defendant until July 1, 1974 as teacher, assistant principal, high school principal and superintendent.

3. That on July 1, 1971 the parties entered into a contract whereby plaintiff was employed by defendant as Superintendent of its schools for a period of three (3) years at a salary of Eighteen Thousand Dollars ($18,000.00) per year.

4. That at a regular meeting of defendant's Board of Directors, held December 27, 1973, it was determined that plaintiff's contract not be renewed, and a member of the Board so notified plaintiff on said day by telephone as requested by plaintiff.

5. That plaintiff immediately requested an explanation of the Board's decision and it was agreed that an informal meeting of the Board be held in plaintiff's office the following morning; that the meeting was in fact held and some comments exchanged, it being the stated concensus [sic] of the Board that plaintiff had held his position long enough and that a change was in order (and would be for the better).

6. That during the meeting plaintiff was handed a sheet of paper on which two (2) of the board members had made notation of the vote taken at the meeting of December 27, 1973 regarding non-renewal of plaintiff's contract; that plaintiff placed the writing where it would be available to the clerk-secretary for her use in preparing the formal minutes of the December 27, 1973 meeting, this being the general procedure when the clerk-secretary was not in attendance at board meetings.

7. That at the close of the informal meeting of December 28, 1973 plaintiff requested the Board to reconsider its decision and was advised by a board member that the Board would do so.

8. That the Board, however, did not reconsider its decision although on two (2) occasions in 1974 it accepted petitions from school patrons and heard similar requests voiced by school patrons at board meetings, that it reconsider the non-renewal of plaintiff's contract.

9. That on or about August 20, 1974 defendant offered plaintiff a teaching position for the school year 1974–75 at an annual salary of Thirteen Thousand Fifty Dollars ($13,050.00), which offer plaintiff declined.

10. That plaintiff, during 1974–75, sought employment among several school corporations as superintendent, but did not obtain such employment until 1975 for the 1975–76 school year, which employment was for an annual salary of Twenty-one Thousand Dollars ($21,-000.00).

In October of 1974 Richman filed his complaint in the Delaware Superior Court claiming breach of his employment contract by the School Board. Judgment was rendered in favor of Richman with the trial court finding that the School Board was in breach of Richman's employment contract

but that the damages Richman sought must be reduced because of his failure to mitigate them.

Cross-appeals followed.

## ISSUES

The School Board presents two issues for review:

(A) Was Richman given notice of non-renewal of his contract pursuant to Ind.Code 20–6–4–4, or at least in substantial compliance therewith? and

(B) Did Richman waive his right to statutory notice? [1]

Richman presents one issue for review:

(C) Were the damages properly calculated.

## DECISION

*ISSUE A*—Was Richman given proper written notice of non-renewal of his contract pursuant to Ind.Code 20–6–4–4, or in substantial compliance thereto.

*PARTIES' CONTENTIONS*—The School Board contends that Richman received adequate written notice of the non-renewal of his contract prior to January 1, 1974, as a result of delivery to him (on December 28, 1973) of the notation of the School Board's vote on December 27, 1973.

Richman replies that he did not receive adequate notice in any form of the non-renewal of his contract and therefore by statute his contract was extended for another twelve months.

*CONCLUSION*—The School Board did not comply with the notice statute and therefore Richman was not properly notified of the non-renewal of his contract as Superintendent.

The controlling statute leaves no room for doubt. Ind.Code 20–6–4–4,[2] specifically provides that:

---

1. Because of our decision we need not address the School Board's third issue, whether the trial court erred in overruling the School Board's motion to dismiss.

2. Ind.Code 20–6–4–4, the statute under which this case arose, was recodified and amended by the Acts 1976, P.L. 100, § 1. The new statute, Ind.Code 20–6.1–4–19(3) and 20–6.1–4–20, is essentially the same as the prior statute.

If, prior to the end of any contractual period, the governing body of the school corporation does not wish to renew the contract of the superintendent, *notice shall be given to the superintendent in writing* delivered in person or by registered mail *on or before January 1st of the calendar year in which the contract is due to expire.* Failure to give such notice shall be construed to be an extension of the contract of the superintendent for a period of twelve [12] months following the end of the current contractual period.

(hereinafter the Statute). (emphasis added).

There was considerable conflict in the evidence as to the events surrounding non-renewal of Richman's contract, but the trial court weighed the evidence and found notice of non-renewal was insufficient:

> In the instant case, however, there was no written notice directed to plaintiff and delivered to him, as such. The writing in question was an informal record of a vote taken at the board meeting and was intended for the use of the secretary in her preparation of the formal minutes; nor was the writing delivered to plaintiff by registered mail.

This finding has support in the evidence. We are bound thereby.[3]

■ The sheet of paper handed to Richman was hardly a definitive and unmistakable statement to him that the School Board was not going to renew his contract for the following year. It was a record of the vote taken by the School Board on the issue of renewal of his contract.[4] It was not addressed to him, i. e., it was not "notice . . . to the superintendent . .". It did not state to him in unequivocal terms that the Board would not renew his contract and that this informal record of the vote taken was notice to him of that fact, as required by the Statute. The trial court found that there was no intent on the part of the School Board that the notation should, in fact, serve as notice of non-renewal to Richman inasmuch as the sole purpose for compiling and retaining the notation was for use by the secretary in typing the minutes of the School Board meeting.[5]

So we conclude, as did the trial court, that under these facts, the mere delivery of a notation of a vote contained in the handwritten minutes of a School Board meeting is not the final, formal, and unequivocal "notice" required by the Statute.

■ But was there substantial compliance with the Statute? Indiana courts have held that if legal notice is required by statute, there may be compliance if the action intended to provide notice substantially satisfies the requirements of the statute. *Galbreath v. City of Indianapolis* (1970), 253 Ind. 472, 255 N.E.2d 225; *Tepe v. Greubel* (1968), 143 Ind.App. 7, 237 N.E.2d 265. If the notice which the party receives achieves the purpose for which the statute was intended the courts will find substantial compliance with the statute. *Galbreath v. City of Indianapolis, supra; Tepe v. Greubel, supra.*

---

**3.** Trial Rule 52:

> On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

**4.** The handwritten notation of the vote taken from the School Board minutes reads in its entirety as follows:

1. Rehire
2. Not reh.
3. No notification

Dec. 27, 1973

A motion is made by Verl Hough to vote on the renewal of the superintendants [sic] contract. Voting will be one (only) of following

1. Renew
2. No renewal
3. No notification

Motion 2nd by Don Wilson

| | |
|---|---|
| No Notification | 1 |
| No Renewal | 1111 |
| Renewal | 0 |

**5.** The School Board president testified that at the time the vote was taken in December, 1973, the School Board believed the oral notice given by phone was sufficient notice to Richman of this contract non-renewal.

The purposes which the Statute seeks to attain are apparent:

1. To provide seasonable notice of non-renewal, and
2. To obviate potential controversies which may arise if notice of non-renewal had not been formally, officially and conclusively given.

The Indiana Supreme Court in *State ex rel. Sights v. Edwards* (1949), 228 Ind. 13, 88 N.E.2d 763, 89 N.E.2d 443 (opinion on rehearing), dealt with a similar statute providing for notice of non-renewal in teaching contracts. The facts were somewhat different in that the teacher in *Sights* was personally delivered a letter of contract non-renewal which she refused to accept or read. But the court indicated the notice must be positive and unequivocal:

> The language used in the notice presented to relator clearly and unmistakably indicated the purpose of the trustee not to renew relator's contract for the succeeding year. It is susceptible of no different meaning, and we hold it was sufficient to make known to relator that her teaching contract would not be renewed, and that she is not entitled to reinstatement.

288 Ind. at 20, 88 N.E.2d at 765.

The trial court recognized the purposes of the Statute in stating in its judgment that:

> If the Legislature intended only that a superintendent be informed before a date certain of the Board's decision not to renew his contract, it would be simple enough to say so and the specific requirements [of the Statute] could be forgotten. It is the opinion of this Court that the Legislature provided the means of notification precisely to avoid the kind of situation which is now before us, in which both parties, acting in good faith but not in compliance with the statute, arrive at an impasse and litigation.

■ So considering the facts most favorable to the judgment, delivery of an unaddressed, informal, handwritten notation for use by a secretary in typing the formal minutes of the School Board meeting, does not constitute unmistakable notice of non-renewal as contemplated by the basic purpose of the Statute. It is certainty, not uncertainty, which is sought.

Adding to the uncertainty here was the statement by a School Board member that the School Board would reconsider its vote. Richman testified both on direct and cross-examination that at the conclusion of the meeting on December 28 (prior to January 1st) he requested that the School Board reconsider its position and that he was assured that they would do so. The trial court, in a finding based on sufficient evidence, found in Finding 7:

> That at the close of the informal meeting of December 28, 1973 plaintiff requested the Board to reconsider its decision and was advised by a board member that the Board would do so.

It is not material that the trial court found that the School Board did not in fact reconsider its position (see Finding 8, *supra*); what *is* material is that the trial court found that the School Board stated to Richman it intended to reconsider its position. Thus the inference can reasonably be drawn that the School Board intended to reconsider and perhaps change its decision, i. e., that the action taken was not final.

Thus we conclude that the notice given did not comply or substantially comply with the Statute so as to give notice to Richman on or before January 1, 1974, that his contract would not be renewed. To conclude otherwise is to drain the life blood out of the Statute.

*ISSUE B*—Did Richman waive his right to written notice?

*PARTIES' CONTENTIONS*—The School Board contends that because Richman voluntarily requested notice by phone of the School Board's action and further requested a subsequent meeting on December 28, 1973, in his office, he waived his right to written notice as required by the Statute.

Richman replies that at no time did he indicate to the School Board it was unnecessary to deliver the statutory notice.

*CONCLUSION*—Richman did not waive his right to written notice of non-renewal of his contract as required by the Statute.

■ "Waiver is the intentional relinquishment of a known right." *Lafayette Car Wash, Inc. v. Boes* (1972), 258 Ind. 498, 501, 282 N.E.2d 837, 839; *Russell v. Trustees of Purdue University* (1931), 93 Ind. App. 242, 178 N.E. 180. Waiver is an election to forego some advantage that might otherwise have been insisted upon. *City of Evansville v. Follis* (1974), 161 Ind.App. 396, 315 N.E.2d 724. The existence of waiver is ordinarily determined from the conduct of the party making it. *Indiana State Highway Commission v. Pappas* (1976), Ind.App., 349 N.E.2d 808; *City of Evansville v. Follis, supra; Russell v. Trustees of Purdue University, supra.*

■■ Waiver is ordinarily a question of fact, and the burden of proving waiver is upon the party claiming it. *Ogle v. Wright* (1977), Ind.App., 360 N.E.2d 240; *Shelt v. Baker* (1922), 79 Ind.App. 606, 137 N.E. 74, 138 N.E. 93. Therefore, we look to the findings of the trial court:

> Defendant further insists that the telephone conversation between plaintiff and defendant's board member on December 27, 1973 constitutes waiver of plaintiff's statutory rights regarding notice of non-renewal, and that such notice was, in effect, delivered in person. Plaintiff's suggestion which resulted in that telephone conversation was not such a waiver requiring the Court to conclude that the principle of waiver was here operative, particularly in view of the subsequent meeting with the Board, plaintiff's request for reconsideration of defendant's decision and the assurance given him that the matter would be re-examined. Plaintiff's conduct is not shown by the evidence to be an intentional relinquishment of his rights under the statute.

There is sufficient evidence in the record that Richman did not waive his right to written notice. Considering the evidence most favorable to the judgment, Richman merely requested that he be informed by phone of the action taken by the School Board at the December 27th meeting. On being informed of the vote, he further requested a "face-to-face" meeting in his office the next day where the notation of the vote taken was given him. None of his conduct by word or deed even approximated the kind of specificity required of waiver. *Lafayette Car Wash, Inc. v. Boes, supra; City of Evansville v. Follis, supra.*

■ Somewhat surprisingly, the School Board would place a burden akin to that of a fiduciary on Richman to inform the School Board of its statutory requirement to give him written notice of the contract non-renewal. The trial court properly disposed of this argument by finding that:

> Defendant's insistence that plaintiff had a duty to advise the Board as to the statutory requirements of notice to him is, likewise, without merit. Plaintiff is a professional school administrator, not an attorney at law. The matter of discontinuing his employment was appropriately for the consideration and advice of defendant's legal counsel.

In truth the president of the School Board, Randall Dasher, testified that on the morning of December 28, 1973, prior to the meeting with Richman, he had spoken with the attorney for the School Board. Moreover the issue of non-renewal of his contract had placed Richman, as Superintendent, in an adversary position with the School Board . . . a position outside the scope of his usual role as advisor to the School Board.

Thus the trial court's conclusion that Richman did not waive his statutory right to written notice was supported by sufficient evidence and the law of waiver.

*ISSUE C*—Whether the trial court erred in the computation of damages.

*PARTIES' CONTENTIONS*—Richman contends that the trial court erred in reducing the damages owed to him under his contract.

The School Board responds that the damages were properly calculated.

*CONCLUSION*—The trial court improperly calculated the damages.

The trial court made the following conclusion of law:

> Accordingly, as to Paragraph I of plaintiff's complaint, the Court concludes that the law is with the plaintiff, and that he is entitled to recover from defendant Salem Community School Corporation damages in the sum of Eighteen Thousand Dollars ($18,000.00) less Thirteen Thousand Fifty Dollars ($13,050.00) in mitigation; i. e. Four Thousand Nine Hundred Fifty Dollars ($4,950.00).

The basis for this determination was that the School Board, in lieu of offering Richman a position as superintendent, had offered him a position as classroom teacher. The trial court reasoned that Richman had an obligation to mitigate his damages and by failing to take the teaching position, he did not do so.

■ Unless based on insufficient evidence or contrary to law, the computation of damages is a matter within the trial court's sound discretion. *Smith v. Glesing* (1969), 145 Ind.App. 11, 248 N.E.2d 366; *Valcan Corp. v. M. T. Sparks, Inc.* (1968), 143 Ind.App. 543, 241 N.E.2d 862. Unfortunately the trial court misapplied the doctrine of mitigation of damages. *Lindenborg v. M & L Builders & Brokers, Inc.* (1973), 158 Ind.App. 311, 302 N.E.2d 816.

■ The doctrine of mitigation requires that when a contract has been breached, a non-breaching party must make a reasonable effort to act in such a manner as to decrease the damages caused by the breach. *Lindenborg v. M & L Builders & Brokers, Inc., supra.*

■ In the area of a breach of an employment contract the non-breaching party must make a reasonable attempt to find work of a similar nature. *Seco Chemicals, Inc. v. Stewart* (1976), Ind.App., 349 N.E.2d 733; *Inland Steel Co. v. Harris* (1911), 49 Ind.App. 157, 95 N.E. 271. And the burden is upon the employer to show that the em-

ployee has failed to mitigate damages. *Hamilton v. Love* (1899), 152 Ind. 641, 53 N.E. 181, 54 N.E. 437; *Seco Chemicals, Inc. v. Stewart, supra.*

The precise question of the requirements for mitigation of damages when a school superintendent's contract for employment has been breached appears to be one of first impression in Indiana.[3] Indiana courts have addressed the subject of mitigation of damages in areas of breach of an employment contract for other types of employment, however. A major case in this area, *Seco Chemicals, Inc. v. Stewart, supra,* succinctly presents the rule:

> An employee discharged in breach of an employment contract is entitled to recover his salary for the balance of the term of the contract less what he, by reasonable efforts, might have earned during that time. *H. C. Bay Co. v. Kroner* (1925), 83 Ind.App. 541, 149 N.E. 184. The burden of pleading and proving this reduction falls on the employer. *Hamilton v. Love, supra.* However, *an employee is not bound to accept employment of a substantially different character or grade. Hinchcliffe v. Koontz,* (1890) 121 Ind. 422, 23 N.E. 271. And it is the general rule that an employee is not obligated to accept even similar employment in a different locality.* (citations omitted). (emphasis added).

349 N.E.2d at 740-41.

We must determine then:

(1) if Richman made a reasonable effort to obtain employment as superintendent in another school district, and

(2) if Richman, by refusing to accept the School Board's offer for a position as teacher, failed to mitigate his damages.

■ There is evidence that Richman made a reasonable attempt to secure employment as a superintendent in another school district once he determined that the

---

**3.** The School Board's reliance on *Lost Creek School Township v. York* (1939), 215 Ind. 636, 21 N.E.2d 58; *School City of Peru v. State ex rel. Youngblood* (1937), 212 Ind. 255, 7 N.E.2d 176, 1002, 9 N.E.2d 80; *New Castle-Henry Township School Corporation v. Hurst* (1969), 145 Ind.App. 131, 247 N.E.2d 835, is misplaced. These cases deal with the issue of teacher tenure once the contract has in fact expired and has not been renewed.

School Board was definitely not going to renew his contract. He testified that he applied to four different school corporations for employment as superintendent for the school year of July, 1974 to July, 1975, but to no avail.

There remains the question of whether by refusing to accept a position as a teacher Richman failed to mitigate damages.

The Indiana statutes clearly distinguish between a school superintendent and teachers as to their qualifications, education, responsibilities and duties. *See, e. g., Ind. Code* 20–6–4–1(c) which states: " 'superintendent' shall mean the properly licensed individual who shall act as the *chief executive officer* of the governing body of the school corporation." (emphasis added).

The Texas Court of Civil Appeals faced with the question of whether a superintendent whose employment contract had been breached had an obligation to accept employment as a teacher reached the conclusion that the two positions were materially different and there was no legal requirement to accept the reassignment. The court stated:

> Briggs was hired as superintendent of the public schools; and under the statute, it is clear that *there is a vast difference* in the position of superintendent of a district answerable only to the Board of Trustees and that of a teacher in the schools. (emphasis added).

*Board of Trustees of Crystal City Independent School District v. Briggs* (1972 Tex. Civ.App.) 486 S.W.2d 829, 835 (application for writ of error refused). *See also State ex rel. Freeman v. Sierra County Board of Education* (1945), 49 N.M. 54, 157 P.2d 234 (individual holding position as both principal and teacher did not fail to mitigate damages by refusing to accept employment as fourth grade teacher).

Recognizing that things are bigger in Texas than elsewhere, and that there may not be "a vast difference" between a superintendent and a teacher, still there is a substantial difference. The positions not being the same for purposes of mitigation,

the trial court improperly reduced Richman's award. The proper award of damages is $18,000, the amount Richman would have received under his contract as superintendent.

So we reverse the trial court's award as to damages with instructions to enter judgment consistent with this opinion and otherwise affirm the judgment.

Affirmed in part, reversed in part.

SHIELDS, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting:

I respectfully dissent.

Here, as in *State ex rel. Sights v. Edwards* (1949) 228 Ind. 13, 88 N.E.2d 763 (opinion on rehearing 89 N.E.2d 443):

> "The language used in the notice presented to [Richman] clearly and unmistakably indicated the purpose of the [Board] not to renew [Richman's] contract for the succeeding year." 228 Ind. 13, 20, 88 N.E.2d 763, 765.

Pursuant to I.C. 20–6–4–4, the notice was in writing and was delivered in person. It met the technical requirements of the statute, particularly in light of the fact that Richman clearly understood the written memo to represent and indicate the fact that the Board had voted not to renew his contract. In my view the holding of the majority serves to require more form than does the statute itself and to elevate that form over substance.

Additionally, Richman's argument that the Board agreed to reconsider its decision has no relevance to whether the notice given was adequate to inform him of the decision which had been made. Whether a Board does or does not reconsider at a subsequent time, or even whether the Board intends to reconsider, does not adversely affect the finality of the decision already made. Nor does it adversely affect the notice given of that decision.

I would reverse and remand to the trial court with instructions to enter judgment for the defendants.