## BARBER v. STATE OF INDIANA.

[No. 24,556.    Filed March 31, 1927.]

1. INDICTMENT AND AFFIDAVIT.—*Averments which inform accused of nature and character of offense sufficient.*—Although the Constitution (Art. 1, §13, §65 Burns 1926) requires that the facts constituting an offense shall be charged with clearness and certainty, that requirement is satisfied with such averments as will inform the accused of the nature and character of the offense with which he is charged.    p. 148.

2. INDICTMENT AND AFFIDAVIT.—*Indictment for malicious trespass held sufficient.*—An indictment which charged that the defendant "maliciously and mischievously" injured a fence belonging to another, being in the language of the statute (§2497 Burns 1926) was not insufficient for failure to use the word "unlawfully" (*State* v. *Dupies,* 91 Ind. 233, and *Batts* v. *State,* 194 Ind. 609, distinguished).    p. 149.

3. TRESPASS.—*Indictment for malicious trespass held not bad for uncertainty.*—An indictment for malicious trespass by injuring a fence was not bad for uncertainty where it named the owner of the property injured and alleged that the injury damaged the property and the owner in a certain amount.    p. 149.

4. TRESPASS.—*Indictment for malicious trespass for injuring a fence sufficient without naming owner of land.*—An indictment which charged malicious trespass by tearing down and removing a fence and alleged damage to the fence and not to the land on which it was located was sufficient without naming the owner of the land. p. 149.

5. TRESPASS.—*Description of land not essential to indictment for malicious trespass to fence.*—An indictment charging malicious trespass by maliciously and mischievously injuring a fence is sufficient without a description of the land on which the fence was located. p. 149.

6. CRIMINAL LAW.—*Sending jury to view place of crime without defendant's consent is error.*—Under the present statute (§2305 Burns 1926), sending a jury to view the place where the crime is alleged to have been committed without the consent of the defendant is reversible error (*Fleming* v. *State,* 11 Ind. 234, explained).    p. 151.

7. TRESPASS.—*Judgment involving defendant's right to easement over another's land in case where prosecuting witness was not party properly excluded in prosecution for malicious trespass.*—In a prosecution for malicious trespass under §2497 Burns 1926 by tearing down and removing a fence, a judgment in favor of the defendant, involving his right of ingress and egress over an easement in adjoining land, the prosecuting witness not being a party to or bound by the judgment, was properly excluded.    p. 152.

8. TRESPASS.—*Prosecution for malicious trespass not proper way of determining defendant's right to use real estate.*—A criminal prosecution for malicious trespass cannot be used as a means of trying disputed rights to the possession or use of real estate growing out of con-

flicting grants or by virtue of titles derived from different sources. p. 152.

9.  TRESPASS.—*Rule forbidding criminal prosecution to determine right to possession or use of real estate does not protect one who maliciously injures property of another.*—The rule forbidding criminal prosecution for trespass as means of determining disputed right to possession or use of real estate does not afford complete protection to one who unlawfully and maliciously injures the property of another when his right to such possession or use is questionable by reason of an undetermined claim of another to the same right of possession or use.  p. 152.

10.  TRESPASS.—*Instruction in prosecution for malicious trespass defining malice held unobjectionable.*—In a prosecution for malicious trespass under §2497 Burns 1926, an instruction to the effect that malice may be inferred from any deliberate wrongful act against another or his property is not objectionable, as malice in such cases . is not limited to injury to property done out of a spirit of cruelty, hostility or revenge against the owner of the property.  p. 153.

11.  TRESPASS.—*Instruction in prosecution for malicious trespass that defendant had burden of establishing a right of way over another's land held proper.*—In a prosecution for malicious trespass by destroying a fence, where the defense of the defendant was that the fence obstructed a right of way to his wife's farm, an instruction requiring the defendant to establish his right to the way claimed and, if established, that it might be lost by nonuser, was proper where the case was tried on such theory and there was evidence to sustain the proposition that the way had been abandoned.  p. 156.

12.  TRESPASS.—*Defendant, having admitted destroying a fence, had burden of showing that it was done under a claim of right and establishing such right.*—In a prosecution for malicious trespass by cutting down and removing a fence, the defendant, having admitted destroying the fence, had the burden of showing that he did so under a *bona fide* claim of right and of establishing such right.  p. 156.

13.  TRESPASS.—*Instruction making defendant's defense depend on his having color of title to land on which he destroyed fence held erroneous.*—In a prosecution for malicious trespass by destroying a fence, an instruction that in order to maintain the defense that the act was done under a *bona fide* claim of right because the fence obstructed a right of way, the defendant must have had color of title to such way, was erroneous.  p. 158.

·From Rush Circuit Court; *Will M. Sparks,* Judge.

Morton Barber was convicted of malicious trespass, and he appeals.  *Reversed.*

*Chauncey W. Duncan* and *Owen S. Boling,* for appellant.

*Arthur L. Gilliom,* Attorney-General and *D. F. Stansbury,* for the State.

PER CURIAM.—Appellant, by indictment, was charged, and, upon trial, found guilty of the offense known as malicious trespass, as defined by §2497 Burns 1926, Acts 1905 p. 584, §407.   He was sentenced to pay a fine of $36, and be imprisoned in the county jail for twenty-one days.   He appealed and has assigned as errors the overruling of his motion to quash the indictment, and the overruling of his motion for a new trial.

Appellant has filed a request for oral argument, but, in view of the record, briefs of counsel and questions presented, we deem an oral argument unnecessary.

The indictment charges that . . . defendant "did then and there maliciously and mischievously injure a certain fence, then and there the property of Mary A. Bundy by then and there maliciously and mischievously tearing down, cutting down and breaking down and removing  said  fence  to the damage of said property of the said Mary A. Bundy in the sum of twenty-five dollars," etc.

This indictment is challenged; (1) For failing to allege that the acts were unlawfully done; and (2) for want of certainty, in that the removal of the fence might result in damage to the fence or damage to the land, or both, but it does not appear which was intended.

Although the Constitution of this state requires of the pleader clearness and certainty in charging an offense, that provision is satisfied with facts which will
1.   inform the accused of the nature and character of the offense with which he is charged.   *Ridge* v. *State* (1923), 192 Ind. 639, 137 N. E. 758; *Kimmel* v. *State* (1926), 198 Ind. 444, 154 N. E. 16.

In the present case, the pleader failed to use the word "unlawfully," and hence the question—Did he use other

language which conveys a like meaning, or such
that would negative the possibility that the al-
leged act charged was lawful? *State* v. *Murphy*
(1863), 21 Ind. 441; *State* v. *Maddox* (1882), 85 Ind.
585, 587.

The indictment is in the language of the statute
(§2497, *supra*), which has no proviso or exception, and
although it does not allege that the acts were unlawfully
or feloniously done, yet it does charge that appellant
maliciously and mischievously did the alleged acts and
damage. To characterize an act as having been done
maliciously and mischievously amounts to a statement
that such act was wrongful and done intentionally,
without just cause or excuse, and hence must be re-
garded as words expressing a meaning inconsistent with
lawful. This conclusion, in connection with the statute
which defines the offense and states the acts which con-
stitute it, refutes the claim that the indictment is in-
sufficient for failure to use the word "unlawfully."
*State* v. *Rodgers* (1910), 175 Ind. 25, 93 N. E. 223.

The indictment named the owner of the property in-
jured. It stated the amount of damage done to that
property and also to the owner thereof. The
character of the property injured was such that
the alleged damage, as a matter of pleading,
might be referred to the property or to its owner. In
either form, the indictment would not be subject to a
motion to quash for uncertainty, nor to such motion
because the damage is alleged to be to both the property
and the owner thereof (*State* v. *Sparks* [1878], 60 Ind.
298; *Kinsman* v. *State* [1881], 77 Ind. 132; *Sample* v.
*State* [1885], 104 Ind. 289, 4 N. E. 40), for the reason
that "to the owner" is immaterial to the accused, as
clearness and certainty of the pleading in this particular
is met by stating the "value of the damage done," which
is material in fixing the limit of the fine, and important

to the accused in the preparation of his defense. *Harness* v. *State* (1867), 27 Ind. 425; *Sample* v. *State, supra.* Moreover, appellant insists that the name of the person owning the land on which the fence was built should have been alleged. The pleading does not proceed upon the theory of injury to the land, but to the fence, and, as a question of pleading, in view of the language of the statute upon which it was predicated, the contention of appellant is not well taken. Nor was a description of the land on which the fence was located an essential ingredient of the offense here charged. *Winlock* v. *State* (1890), 121 Ind. 531, 23 N. E. 514.

The present contention of appellant might arise at the trial upon the evidence. The location of the fence at a place, or under such circumstances, which would have justified appellant in lawfully removing it, even though he entertained malice toward the owner, would not make him criminally liable. *State* v. *Headrick* (1856), 48 N. C. 375, 67 Am. Dec. 249; *Edgar* v. *State* (1908), 156 Ala. 147, 47 So. 295; *Boyett* v. *State* (1902), 132 Ala. 23, 21 So. 551; *Tegarden* v. *State* (1914), 171 S. W. (Ark.) 910; *State* v. *Watson* (1882), 86 N. C. 626; *McCullers* v. *State* (1919), 86 Texas Crim. Rep. 247, 216 S. W. 182.

The instant charge is unlike that of *State* v. *Dupies* (1883), 91 Ind. 233, where, from the allegations of the indictment, two or more sections of the statute were to be construed together, one defining an offense and the other, under similar circumstances, not an offense, it was error not to characterize the acts relied upon to constitute the offense as unlawful, or to state facts from which the unlawful character of the transaction might be fairly inferred. Nor is the case of *Batts* v. *State* (1924), 194 Ind. 609, 144 N. E. 23, controlling, for in that case transporting intoxicating liquor was the charge based upon a statute making it "unlawful for any per-

son to transport . . . intoxicating liquor except as in this act provided." Because of the exception in this latter act, it was necessary to characterize the transporting as unlawful. The indictment at bar is not subject to more than one construction and is sufficiently certain to inform appellant of the offense with which he was charged.

It appears from the record that, at the conclusion of the evidence, the court, of its own motion, sent the jury with the sheriff to view the place where the fence had been torn down, "to which action of the court the defendant at the time objected, and refused his consent thereto," but that his objection was overruled, and he excepted. For years prior to 1881, the statute provided that in criminal cases, as well as in civil cases, "Whenever, in the opinion of the court, it is proper for the jury to have a view of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer," etc. 2 R. S. 1852 p. 382, §164. Under this statute, it was not error for the court to send the jury to view the place without the consent of the defendant (*Fleming* v. *State* [1858], 11 Ind. 234), but in 1881, that statute was amended, (ch. 36, Acts 1881 [Spec. Sess.] p. 114, 162, §252), by inserting the clause, *and with the consent of all the parties* (our italics) immediately following, "Whenever, in the opinion of the court." §1827 R. S. 1881, §2305 Burns 1926. Obviously, the purpose of the legislature in making the amendment was to limit the authority of the court in the matter of sending the jury trying a criminal case to view a place where any material fact occurred, to the cases, and those only, where all the parties shall consent thereto. It was error to send the jury to view the location of the fence in question without defendant's consent. *Conrad* v. *State* (1896), 144 Ind. 290, 298, 299, 43 N. E. 221.

One ground of defense relied on by appellant was that the fence which was torn down and removed was built on land over and along which he had an easement for a right of way to travel between his dwelling and a highway, and that it had been wrongfully and without right constructed at a place and in a manner to obstruct and close up such right of way, and that he merely had removed it in order to pass through. In support of this contention, he offered in evidence all the pleadings and various steps taken and proceedings had, including the opinion of the Appellate Court and final judgment entered in favor of defendants, in a cause wherein Penina Binford, et al, were plaintiffs, and Margaret Small, et al., including this defendant, were defendants, which suit involved the right of the defendants to ingress and egress from their land immediately south of the Binford land, over a strip sixteen feet wide on the west side of the Binford land, to a public highway. The prosecuting witness in the instant case was not a party to that suit, and in no manner bound by any order or judgment made or rendered therein. The court excluded each and all of these offered items of evidence, and in doing so, correctly ruled. The case was tried upon the theory, sustained by the evidence, that the Bundy fence destroyed by appellant was constructed upon the east line of the Bundy land, but whether within the line of travel from a certain public highway to and from the land of appellant's wife, was a question of fact for the jury. The right to thus travel is not based upon any paper authority or evidence of title, or decree of any court, but upon an asserted right acquired by long continued use. It is true, criminal prosecutions for malicious trespass cannot be used as a means of trying disputed rights to the possession or use of real estate growing out of conflicting grants, or by virtue of titles derived from differ-

ent sources (*Myers* v. *State* [1921], 190 Ind. 269, 273, 130 N. E. 116; *McKillip* v. *State* [1916], 184 Ind. 331, 111 N. E. 178), but this rule will not afford complete protection to one who unlawfully and maliciously injures property of another when his right to do so is questionable by reason of the undetermined asserted conflicting right of possession or use of the land upon which the alleged unlawful and malicious acts were committed.

Appellant insists that the court erred in giving to the jury of its own motion each of certain instructions. Referring to them in the order challenged, No. 12 10. merely defined the word "malice," using definitions approved by leading lexicographers, and closed by telling the jury that malice may be implied from any deliberate and cruel act against another or his property. The only objection to this instruction calling for notice is the claim that, in this class of cases, the word "malice" has a special meaning, and unless the injury alleged in the indictment was done out of a spirit of cruelty, hostility or revenge against the owner of the property injured, there is no criminal responsibility. Citing *Commonwealth* v. *Williams* (1872), 110 Mass. 401. The definition suggested by appellant, although supported by the Williams case, is too narrow. The statute (§2497, *supra*), "whoever maliciously or mischievously injures or causes to be injured any property of another," refers to wrongful acts to the injury of another's property, intentionally done without just cause or excuse, and not necessarily with malice against the owner.

There was testimony given in this case that at the time the fence in question was injured, and for many years prior thereto, appellant's wife owned a farm eighty rods south of a certain public highway known as the Carthage turnpike, hereafter referred to as "pike."

Appellant, in justification of his act in cutting the fence, claimed that access to this land from the pike was over the lands to the north along the line between adjoining landowners, in this case, Binfords on the east and Mrs. Bundy on the west, the latter owning two acres fronting on the pike, her east line being twenty-five rods in length north and south, of which she maintained the north half of the line fence. There was no fence on the east side of the claimed roadway. The fence in question was located on the Bundy land from four to ten inches west of her east line, and was constructed out of wire, designated by the witnesses as poultry fencing, fastened at each end to what is known as an end post and sawed line posts between, to which the fence was stapled. This fence was constructed in October, 1922, and, without notice to the Bundys, appellant, on April 2, 1923, cut the fence close to each of the posts and then sawed them off, nine in number, from three to five inches above the ground.

Mrs. Bundy obtained a deed for the two-acre tract in April, 1891, and moved onto it in 1895, and thereon, with her husband, she has continuously resided. The pike was completed in 1860. Prior to 1860, there was a road leaving the one on which the pike was constructed west of the two-acre tract, running in a southeasterly direction, intersecting the half section line between the Binford land and that owned by another on the west, at a point about twenty-five or thirty rods south of the pike; thence south a short distance on the line between these landowners; thence in a southeasterly direction to the north line of the Barber land; thence easterly and across Blue river to the town of Carthage, about one-half mile from the river. There was evidence of a lane on the Binford land beginning at a point on the half section line, intersected by the angling road from the northwest, north to the pike, through a gate at the

north end; and some evidence tending to show that at the time the angling road was in use, the then owner of the land which included the two-acre tract adjoining Binford on the west also, for his convenience, had a lane on the east edge of his land north to the pike. This north outlet from the Barber land seems to have been used by the Barbers and their predecessors only in case of the unfordability of Blue river. Near the southeast corner of the Bundy tract, and on the line of the asserted roadway, a gravel pit was open twenty or more years prior to 1923, thus diverting travel from the south to the east around the pit, and thence in a northwesterly direction to the pike at the northeast corner of the Bundy land. The evidence is conflicting as to when and whether any part of the traveled portion of the road from the gravel pit north to the pike was ever on the Bundy land. There is evidence that the Bundys, twenty-seven years prior to 1923, erected a building about ten rods south of the center of the pike, one end of it being on the east line of the two-acre tract, where it has continuously and now stands; that a fence was constructed about that time from the building north on the Bundys' east line to the pike and continued to remain there until about seven or eight years prior to the trial of this case, when it was moved west about sixteen feet and remained there until the fence in question was constructed in October, 1922. Appellant also testifies that in cutting the fence, he did so without any malice toward the Bundys, and not until he had advised with his attorney, who had long been engaged in the practice of the law, and that his act was in accordance with the advice thus given him.

Instruction No. 13, pertains entirely to the defendant's "claims that originally there was a right of way extending north" from the farm now owned by his wife, one-half over the east edge of the Bundy land and one-

half upon the Binford land, acquired through continued use by former owners in title, which right was held by him at the time he cut the fence. The jury was also told, in substance, that, on the other hand, there is evidence tending to show that such right of way was diverted from the Bundy land, and for several years had been entirely on the Binford land, and if they found there had been a right of way, as claimed by defendant, such right of way might be abandoned by non-user for twenty years, provided that Bundy had taken the exclusive possession of the passage way and used the same exclusively as part of her two-acre tract for a period of twenty years, in which case the defendant's right thereto would cease, and he would have no right thereafter to reassert any such claim.

Appellant insists that this instruction was erroneous for the reasons that it submitted to the jury the rights of the respective parties to the land on which the fence was located; that unless appellant could maintain his claim of a right of way, he should be found guilty; that there was no evidence that the Bundys had used the strip exclusively as a part of their two acres; that it assumed that the way was a private one which might be lost by non-user, and that it ignores the presumption of innocence, and that the burden of proof was on the state.

It is true the malicious trespass statute was not intended to furnish a remedy for the determination of conflicting claims in real estate, but there was

11, 12. evidence tending to show that appellant destroyed the fence under the belief that it obstructed his lawful privilege of passing over that particular strip of ground acquired by long use. Appellant, under all of the circumstances here appearing, having admitted that he cut and removed the fence, would ordinarily be expected to show that he did the act under a *bona fide* claim of right, and any evidence tending to

prove that he had reasonable grounds for such belief was admissible, thus entitling him to an instruction pertinent to this evidence as bearing upon his good faith belief. The jury was not authorized by this instruction to determine the rights of the parties to the strip of land in question, nor do we find any words making his acquittal depend upon his maintaining his asserted claim. The instruction was within the evidence, not only as to the claim of an acquired private use of the strip, but in submitting to the jury the question of its abandonment. The case was tried on the theory of a private right of way, and it was proper to instruct upon that theory. Reasonable doubt and the question of burden of proof was fully and correctly given to the jury by other instructions.

Instruction No. 14 follows: "The law is, that no man has a right to enter upon the land of another without his consent or to do damage to such person's property without his consent and if he does so maliciously he is guilty of malicious trespass but where a person who has color of title to the use of a piece of land which is really owned by another person if under such circumstances he in good faith entered upon such land and without malice removed the obstructions to his use of said land, he could not be held guilty of malicious trespass and if under such circumstances he consulted with a reputable lawyer in regard to the same and followed such advice in doing what he did, this would be a circumstance for you to consider in his favor determining whether or not he acted maliciously in what he did but he must always act in good faith and he must have at least color of title to the use of such land and if he under all the circumstances of the case knew that he had no right to enter upon such land or with the exercise of ordinary prudence and judgment ought to have known that he did not have such right, he could not rely exclusively upon the ad-

vice of an attorney to the contrary and defeat an indictment for malicious prosecution."

We cannot approve that part of this instruction which apparently makes appellant's defense depend upon his showing color of title to the piece of land upon which the fence in question was constructed. Otherwise, the instruction is not objectionable.

The objections urged against instructions Nos. 15 and 17 command no notice, other than to say they are not well taken.

Inasmuch as this case will probably be re-tried, the question of insufficient evidence is at this time unimportant.

For the error in permitting the jury to view the premises over appellant's objection, and the probable influence of instruction No. 14 on the question of showing color of title, the judgment is reversed, with instructions to grant a new trial.