CITY OF EVANSVILLE, INDIANA *v*. C. GENE FOLLIS AND GERTRUDE FOLLIS.

[No 1-1073A178. Filed September 3, 1974. Rehearing denied October 7, 1974. Transfer denied February 24, 1975.]

*John C. Cox, Timothy R. Dodd, Cox, Schroeder, Dodd, Staser & Mitchell,* of Evansville, for appellant.

*John D. Clouse,* of Evansville, for appellees.

LYBROOK, J.—Plaintiffs-appellees (Follis) obtained an injunction against the defendant-appellant (City) enjoining it from interfering with plaintiffs' construction of certain improvements within the boundaries of the right-of-way of an Evansville city street.

Basically, City's appeal challenges the sufficiency of the evidence to support the judgment granting the injunction. Appellees respond by contending that the evidence supports recovery upon any one of the following theories: (1) Permissible Encroachment, (2) Waiver and (3) Estoppel.

Appellees resided upon certain real property owned by them at the corner of St. James and Bellemeade Streets in Evansville. In 1972 they employed Evansville Garage Builders and Master Remodelers (Builders) to construct a swimming pool and a surrounding brick wall in their back yard. John Tucker of Builders, after inspecting the site, took the construction plans to the Area Plan Commission Office and was issued a zoning permit. He then went to the Building Commissioner and obtained a building permit. When these permits were issued, neither the Plan Commission nor the Build-

ing Commission informed Tucker or Follis that the planned construction would encroach upon the Bellemeade Street right-of-way. Apparently none of the parties at this point were aware of the possible encroachment. The applications show that the swimming pool would be located 18 feet south of the north property line. Prior to the issuance of the permits, Ray Borman, Assistant Building Commissioner, and Tucker met at the job site and discussed the work. Borman later called Tucker who went to the Building Commissioner's office where he was then conducted to the City Engineer's office and introduced to a Mr. Berridge, who informed Tucker that as long as they stayed 65 feet back from St. James, they could construct a fence, suggesting that they move the fence back two feet from the sidewalk. Berridge further added that it didn't matter where the swimming pool was placed once the fence was up. Apparently no one from the engineer's office told Tucker that the proposed plan encroached upon the city's right-of-way.

When construction was 90 per-cent completed, a stop-work order was received from City. Follis and Builders then discovered that City owned a right-of-way extending 12½ feet into the Follis' yard. A Mr. Ernspiger of the Building Commissioner's office stated that apparently that office had neglected to check property descriptions and width of setbacks before issuing the building permit.

The evidence at trial revealed that a portion of the wall and swimming pool was being constructed within the right-of-way owned by City although neither encroached upon the traveled portion of Bellemeade Street as it presently exists. The wall neither obstructs nor interferes with the vision of persons driving upon either Bellemeade or St. James Street.

Follis petitioned the Board of Public Works to vacate City's right-of-way. From the denial of their petition, Follis appealed. Their amended complaint requested that City be enjoined from interfering with improvements constructed on

their property which would encroach upon City's right-of-way for so long as the City was not using the right-of-way.

After trial, the court found that the building permit issued to plaintiffs was legally issued by the authorities and agents of the City of Evansville, that plaintiffs would be permitted to maintain the structures until such time as the right-of-way is needed by the City of Evansville, that plaintiffs were ordered to pay the sum of $3,000 for the use of the right-of-way until such time as it becomes necessary to build capital improvements thereon, and in the event the city widens Bellemeade Avenue, the above sum was to be used to remove the improvements referred to. Finally the court enjoined the defendant city from "interfering with the completion of the improvements under construction on plaintiffs' real estate for so long as said defendant does not need said right-of-way for the prupose [sic] of making capital improvements."

City argues that the injunction cannot stand, concluding that the trial court grounded its judgment upon the doctrine of estoppel. City contends that this doctrine is inapplicable under the evidence because of the absence of knowing misrepresentation on the part of the City.

However, in reviewing this case we are mindful of the proposition that if the judgment can be sustained on *any* theory presented by the issues, we must affirm.

In *Indiana & Michigan Electric Co.* v. *Schnuck* (1973), 260 Ind. 632, 298 N.E.2d 436, the court said:

> ". . . A general judgment is presumed to be based upon findings supported by the evidence. Gilot v. Walsh (1968), 142 Ind. App. 628, 236 N.E.2d 607. Here, no request was made for special findings so the finding must be treated as general, and if the action of the trial court is sustainable on any theory, it must be affirmed. (Citations omitted)."

In *Oxford Development Corp.* v. *Rausauer Builders, Inc.* (1973), 158 Ind. App. 622, 304 N.E.2d 211, this court observed:

> ". . . we are mindful that our standard of review requires affirmance of a judgment if it can be sustained on any

theory presented by the issues. * * * Further, all reasonable presumptions are indulged in favor of the trial court, and this court will make no presumptions in favor of an appellant to sustain any alleged error. * * *" (Citations omitted).

We shall therefore proceed to examine this cause in the light of each of the theories suggested by appellees, to-wit: (1) Permissible Encroachment, (2) Waiver and (3) Estoppel.

## I.  Permissible Encroachment

The evidence revealed that plaintiffs' proposed swimming pool and wall, while located in their yard, encroached upon City's right-of-way. However, it was further shown that the proposed improvements were not located within the traveled portion of the street. Neither did they obstruct the vision of drivers upon the street nor did they interfere in any way with the City's use of its right-of-way as presently located.

In *Town of Ogden Dunes* v. *Wildermuth* (1968), 142 Ind. App. 379, 235 N.E.2d 73, the Town had sued the landowners to abate a nuisance which consisted of a wooden fence located within the right-of-way of a public street. The trial court decided the issues adversely to the town which appealed, relying heavily upon *Steele* v. *Fowler* (1942), 111 Ind. App. 364, 41 N.E.2d 648, and other cases. In *Steele* a landowner had been denied an injunction when he attempted to enjoin the City of Princeton from entering onto a portion of a street right-of-way and removing a concrete wall which had been constructed by landowner. In *Town of Ogden Dunes, supra,* the court distinguished *Steele* and other authorities cited by *Town* on the basis that in the cases cited the obstructions were either in the traveled portions of the highway or were permanent in nature. In *Town of Ogden Dunes,* this court said:

"In the case at bar there was ample evidence upon which the trial court could have based its decision that the fence in question did not prevent vehicles from using the complete paved portion of the abutting street.

"It is our opinion that even if there had been an affirmative finding that the fence was in the right-of-way of Skyline Drive, an abutting land owner has the right to make any reasonable use of the highway which does not interfere with the enjoyment of the public easement.

"In the case of *Huffman* v. *State* (1899), 21 Ind. App. 449, 52 N.E. 713, the court stated as follows:

" '. . . It is the firmly established rule in this State that the owner of lands abutting upon a public highway owns the fee to the center thereof, subject only to the easement which the public has for highway purposes. . . .

" 'The right of the owner yields only to the greater rights of the public. As we have said, the only right the public has is simply an easement affording a passage over and along the highway. . . .' "

"In 25 Am. Jur. *Highways* 291; and in 15 I.L.E. *Highways* 23, and in the cases cited therein, it is stated:

" 'The general rule that a fence within a highway constitutes a nuisance, in some instance, has been held not to apply to a fence erected outside the traveled portion of the way. . . .' "

"From a review of the evidence it appears that the fence in question was not within the traveled portion of the right-of-way of Skyline Drive; and the fence in question not being a permanent structure, did not constitute a nuisance *per se*.

"Further, the evidence clearly substantiates the fact that said fence did not constitute a dangerous hazard, as alleged in rhetorical paragraph 5 of appellant's complaint. The evidence discloses that the view of persons operating motor vehicles on Skyline Drive was not obscured, and that the fence did not force pedestrians to use that portion of said street used by motor vehicles.

\* \* \*

"The decision and judgment of the trial court was general in character, and it is our opinion that the trial court could have found either that said fence did not encroach on said public right-of-way; or that the fence in question was not a permanent structure; or that the erection of said fence did not constitute a public nuisance. There is no way of knowing precisely how the trial court arrived at its decision, for there were no special findings of fact requested or made."

Like *Town of Ogden Dunes* the evidence in the case at bar, viewed most favorably to the decision of the trial court, is that the Follis' pool and wall did not obstruct the vision of persons driving along the street nor did it interfere with the public use thereof. While a respectable argument could be maintained that the pool and wall were permanent structures, the trial court must have determined otherwise. There was evidence in the record as to the cost of removal if that became necessary. The trial court must have regarded the construction as temporary, at least in the sense that it was capable of being removed for in fact he made provision in the judgment for the payment of $3,000 to remove these improvements if that became necessary.

The evidence was sufficient to establish that the pool and wall constituted a permissible encroachment upon City's right-of-way. The court's judgment provides that the encroachment will remain permissible so long as the City does not need this portion of the right-of-way for public use, and in such event, the City has a substantial sum of money paid in by appellees to remove the obstruction. The fairness of the court's decision to the City, the landowners and the traveling public can hardly be questioned.

## II. Waiver
## III. Estoppel

Since the terms Waiver and Estoppel are often used interchangeably, we will consider them together. Quite often they contain the same elements and ask essentially the same relief, but technically the two may be distinguished. Waiver has been defined as the voluntary and intentional relinquishment of a known right. It may be distinguished from estoppel in that the existence of waiver is ordinarily determined from the conduct of the party making it. Whereas, the existence of estoppel is determined by the acts, knowledge, and conduct of both parties. 12 I.L.E. *Estoppel,* § 30, pp. 364-366.

We experience difficulty in applying estoppel to the situation at bar. It has been held that where the facts are equally known or accessible to all parties concerned, as there were in the case at bar, there can be no estoppel *in pais*. *Wolfe* v. *Town of Sullivan* (1893), 133 Ind. 331, 32 N.E. 1017.

In *Steele* v. *Fowler, supra,* the court, quoting *Cook* v. *Walling* (1889), 117 Ind. 9, 19 N.E. 532, said:

> " 'An estoppel *in pais* has for its foundation the proposition that a person *sui juris* has, by misrepresenting the truth, purposely induced another to believe in, and act upon, the existence of certain facts, which, if they were now made to appear different from what they were represented to be, would cause substantial injury to the person who acted on the faith of the representation.' "

Since neither the City nor the landowners in the case at bar knew the exact location of the boundary line at the time the permit was issued, and since this information was readily accessible to both parties from public records, the requisite elements of estoppel are missing.

As to waiver, appellees argue that since at least four officials or agents of City had full knowledge of the planned improvements, and gave their approval thereto, City has relinquished its right to assert its right-of-way.

However persuasive that argument might be under certain evidence in the record which tends to support it, we conclude that the trial court did not intend to find that City waived its rights. This is evidenced by the requirement that appellees pay $3000 for the use of the right-of-way. Such payment would be inappropriate if City had forever waived its rights. Further the fact that a provision was made for removal of the improvements from the right-of-way in the future negatives a permanent relinquishment by the City.

In *Lafayette Car Wash, Inc.* v. *Boes* (1972), 258 Ind. 498, 282 N.E.2d 837, waiver was defined by the Supreme Court as follows:

"Waiver is the intentional relinquishment of a known right; an election by one to forego some advantage he might have insisted upon. Doan v. Ft. Wayne (1969), 253 Ind. 131, 252 N.E.2d 415; Templer v. Muncie Lodge, *supra*. In the latter case the Court very clearly set out the distinction:

'There is a distinction between waiver and estoppel. A person who is in a position to assert a right or to insist upon an advantage may by his own words or conduct, and without reference to any act or conduct of the other party affected thereby, waive such right; and, once such right is waived, it is gone forever, and he will therefore be precluded from asserting it. A person cannot, however, waive a right before he is in a position to assert it. . . .' 50 Ind. App. 333, 97 N.E. at 549."

However, as previously noted, there is sufficient evidence to support the court's judgment under the doctrine of permissible encroachment. The use by the landowners does not offend either the rights of the City or the line of cases enunciating this doctrine.

Judgment affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 315 N.E.2d 724.