William **MULRY**, Jr., Earl **Trusley**, Appellants (Defendants Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 2–877A306.

Court of Appeals of Indiana, Second District.

Jan. 21, 1980.

Rehearing Denied Feb. 29, 1980.

---

Robert F. Alden, Indianapolis, for appellants.

Theodore L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Mulry and Trusley were tried jointly by the court and convicted of Malicious Trespass upon the premises of the Woodland Twin Theater in Carmel, Indiana.[1] On appeal they contend (1) the trial court erred in admitting evidence of their involvement in a separate offense at the Nora Theater; (2) the trial court erred in admitting statements made while in police custody; and (3) the decision of the trial court was not supported by sufficient evidence. We affirm in part and reverse in part.

The evidence favorable to the trial court's decision discloses that between three and four a. m. on October 31, 1976 all the windows were shattered at the Woodland Twin Theater in Carmel, Indiana. The investigating officer discovered fresh blood on some of the glass fragments and on the sidewalk adjoining the theater.

At approximately 3:45 the same morning, special deputy Fleenor observed Mulry and Trusley stop at the Nora Theater. Trusley emerged from the parked vehicle, dropping a cloth soiled with fresh blood. While Mulry waited inside the car, Trusley approached the theater and began smashing the windows with a tire iron. Deputy Fleenor then arrested both Mulry and Trusley. While arresting Trusley the deputy noticed Trusley's left hand was cut and bleeding profusely, although he did not notice any blood in the area.

After their arrest Deputy Fleenor asked the two men if they had been to the Carmel theater location. Mulry responded they had just left there, to which Trusley reacted by bumping Mulry and telling him to "be quiet." Later Trusley's blood was analyzed and determined to be the same type as the blood found at the Woodland Theater.

1. IC 35-1-66-1 [Burns Code Ed. 1975] repealed effective October 1, 1977. For present law, see IC 35-43-1-2 [Burns Code Ed. 1979 Repl.].

## I.

### Involvement in the Nora Offense

Trusley and Mulry urge evidence of their involvement in the incident at the Nora Theater was improperly admitted because it was a separate act having little or no probative value to the offense charged. We disagree.

Although evidence of separate and distinct offenses is generally inadmissible, this evidence may be introduced to establish a common plan or scheme when the scheme embraces a series of crimes so related that proof of one crime tends to prove the crime charged. *Matter of Perrello*, (1979) Ind., 386 N.E.2d 174, 178; *Gears v. State*, (1932) 203 Ind. 380 at 383, 180 N.E. 585 at 586; *Gubitz v. State*, (1977) Ind.App., 360 N.E.2d 259, 264; 1 *C. Torcia, Wharton's Criminal Evidence*, § 248 (13th ed. 1972). The probative value of this evidence lies with the special relationship between the crime or crimes within the series and the criminal offense charged, the offenses sharing similarities or peculiarities such as the nature of the crimes or the means by which the offenses are committed. *See: Watts v. State*, (1950) 229 Ind. 80, at 103–04, 95 N.E.2d 570, at 580.

In the present case, the Nora Theater offense was sufficiently similar to the charged offense to be relevant in establishing a common plan or scheme. The targets, both theaters, were vandalized within the same hour. Further, the same type of damage was inflicted upon both theaters.

## II.

### Statements While in Police Custody

Trusley and Mulry urge the incriminating statements made after their arrest should not have been admitted into evidence because the State did not establish they understood and voluntarily waived their constitutional right against compulsory self-incrimination, as required by *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The State responds the statements were spontaneous and, therefore, outside the scope of *Miranda*, but, if the statements were the product of custodial interrogation, the evidence was sufficient to establish a voluntary waiver of their constitutional right of silence.

Contrary to the State's assertion, the statements were not spontaneous, but were in response to a direct question by Deputy Fleenor after arrest. Admissibility of the statements is, therefore, governed by *Miranda*. 384 U.S. at 444, 86 S.Ct. 1602.

Waiver denotes the intentional relinquishment of a *known* right. *City of Evansville v. Follis*, (1974) 161 Ind.App. 396, at 402, 315 N.E.2d 724, at 728. Therefore, when reviewing a trial court's finding of waiver under *Miranda*, our duty is to determine whether there is sufficient evidence to support the trial court's finding that the *Miranda* warnings were given and the rights involved therein waived. *Richardson v. State*, (1978) Ind., 373 N.E.2d 874, 875; *Ortiz v. State*, (1976) 265 Ind. 549, 553, 356 N.E.2d 1188, 1191.

Absent other fully effective means of informing an accused of his right of silence, *Miranda* requires prior to any custodial interrogation the accused be informed he has the right to remain silent, that any statement he makes may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed. 384 U.S. at 444, 86 S.Ct. 1602; *Lane v. State*, (1977) 266 Ind. 485, 364 N.E.2d 756. *Miranda* further requires, before a statement made by defendant under circumstances requiring the warnings may be admitted into evidence against him, the State must establish the warnings were given and a knowing and intelligent waiver of the rights involved was made. *Miranda*, 384 U.S. at 479, 86 S.Ct. 1602. *Lane v. State; Ortiz v. State; Craft v. State*, (1978) Ind.App., 372 N.E.2d 472. If the State fails to sustain its burden under *Miranda*, the confession is not admissible even though, under traditional analysis, the confession may have been considered voluntary. *Miranda*, 384 U.S. at 457, 86 S.Ct. 1602; *Michigan v. Mosley*,

(1975) 423 U.S. 96, at 100, 96 S.Ct. 321, 46 L.Ed.2d 313; *Michigan v. Tucker,* (1974) 417 U.S. 433, at 443, 94 S.Ct. 2357, 41 L.Ed.2d 182.

■ At trial Deputy Fleenor testified he advised Mulry and Trusley of their "*Miranda* rights." When specifying the warnings given, Fleenor did not state he warned them any statement made could later be used as evidence against them. The record reveals no evidence from which to infer Mulry and Trusley were informed of the potential inculpatory use of their statements. Because the evidence fails to establish that the requisite *Miranda* warnings were given, the trial court erred in finding the rights involved waived and, therefore, in admitting the statements into evidence against their maker. *Goodloe v. State,* (1969) 253 Ind. 270, 252 N.E.2d 788; *Sampson v. State,* (1968) 250 Ind. 625, 237 N.E.2d 254, *reh. denied* 238 N.E.2d 458; *Dawson v. State,* (1975) 163 Ind.App. 493, 324 N.E.2d 839.

■ The Indiana legislature has enacted IC 35-5-5-2 [Burns Code Ed.1979 Repl.] to guide the trial court in determining the overall voluntariness of a confession. This statute enumerates factors to be considered by the trial court in determining the voluntariness of a confession and its resulting admissibility into evidence. Among the factors to be ·considered by the trial court are the *Miranda* warnings, but the statute specifically allows the presence or absence of *any* of the enumerated factors "need not be conclusive on the issue of voluntari-

ness."[2] Hence the statute would appear to allow a determination that a confession was voluntary and, therefore, admissible into evidence, although the State had failed to sustain its burden under *Miranda.*

*Miranda,* however, explicitly holds before an accused may voluntarily waive his right against compulsory self-incrimination he must understand the meaning of that right, which requires an explanation of the consequences "not simply [as] a gloss on the warning of the right to remain silent . . , but rather . . . [as] a separate and distinct requirement." *United States ex rel. Magoon v. Reincke,* (1968 D.C.Conn.) 304 F.Supp. 1014, *affd.* 416 F.2d 69 (2d Cir. 1969). The Supreme Court in *Miranda* emphasized the significance of informing an accused of the potential inculpatory use of his statement "in order to make him aware not only of the privilege [of silence], but also of the consequences of foregoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege." 384 U.S. at 469, 86 S.Ct. at 1625.

Therefore, insofar as a confession may meet the voluntariness standard of IC 35-5-5-2 but fail to meet the constitutional requisites of *Miranda,* the confession is not admissible against that defendant making the statement. *See: Michigan v. Mosley,* (1975) 432 U.S. 96, at 100, 96 S.Ct. 321, 46 L.Ed.2d 313; *Dawson v. State,* (1975) 163 Ind.App. 493, 324 N.E.2d 839, 844.[3]

**2.** The statute specifically provides:

—The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including but not limited to (1) the time elapsing between the arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to

the assistance of counsel, and (5) whether or not such defendant· was without the assistance of counsel when questioned and when giving such confession. The presence or absence of any of the above mentioned factors to be taken into consideration by the judge *need not be conclusive* on the issue of voluntariness of the confession. IC 35-5-5-2. [Emphasis added.]

**3.** Indiana's voluntariness statute is modeled after 18 U.S.C. § 3501 (1976), the "Post *Miranda* Act," a statute designed to offset the "harmful" effects of certain court decisions relating to the admissibility of confessions, including the *Miranda* decision. *United States v. Crocker,* (10th Cir. 1975) 510 F.2d 1129, 1136. The inherent constitutional problems with a § 3501 determination of voluntariness, although contrary to

■ The State correctly contends the procedural safeguards of *Miranda* are personal to the one whose rights were violated and cannot be invoked by a co-defendant. *United States v. Shaffner,* (7th Cir. 1975) 524 F.2d 1021, *cert. denied,* 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976). Although properly objecting to admission of his own statement on *Miranda* grounds, neither Mulry nor Trusley specifically objected to admission of co-defendant's statement. Therefore, any error in admission of each defendant's statement against the other as co-defendant is waived and was properly considered by the trier-of-fact.[4] *Blow v. State,* (1978) Ind., 372 N.E.2d 1166; *Cf., Winston v. State,* (1975) 165 Ind.App. 369, 332 N.E.2d 229.

■ Because evidence was admitted in violation of *Miranda,* we must determine whether error in admission of the tainted evidence was harmless beyond a reasonable doubt. *Chapman v. California,* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Dyer v. State,* (1976) Ind.App., 342 N.E.2d 671. In cases subsequent to *Chapman,* the United States Supreme Court has approved the "overwhelming evidence" test to determine whether the error is harmless. *Brown v. United States,* (1973) 411 U.S. 223, 231, 93 S.Ct. 1565, 36 L.Ed.2d 208; *Harrington v. California,* (1969) 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. Under this analysis, we weigh both the amount and probative value of the inadmissible evidence against the remaining evidence supporting guilt to determine whether the weight of the properly admitted evidence, compared with that of the tainted evidence, is "overwhelming." *Moss v. State,* (1975) 165 Ind.App. 502, 508, 333 N.E.2d 141, 145; *reh. denied* 165 Ind. App. 510, 335 N.E.2d 633.

■ Absent Mulry's admission that he and Trusley had just left the Carmel theater, the evidence totally fails to link Mulry to the Woodland offense. The remaining evidence places him only at the Nora location. Admission of the tainted evidence against Mulry was, therefore, not harmless beyond a reasonable doubt, and normal procedure requires remand for new trial.

Because Mulry has also challenged the sufficiency of the evidence, we must address the additional question of whether a determination of reversible trial error, be-

the requisites set out by *Miranda,* has not yet been addressed by the United States Supreme Court.

In *United States v. Crocker,* the Tenth Circuit Court of Appeals, holding that the contested confession met both the requirements of *Miranda* and § 3501, observed, in *dicta,* that the trial court properly used the voluntariness standard of § 3501 as opposed to the more exacting requirements of *Miranda.* In support of its stand, the Tenth Circuit cited *Michigan v. Tucker,* (1974) 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182, in which the United States Supreme Court distinguished between depriving an accused of his constitutional privilege of silence and merely failing to make available to accused the "full measure of procedural safeguards associated with that right since *Miranda.*" 417 U.S. at 444, 94 S.Ct. at 2364. In *Michigan v. Tucker,* the United States Supreme Court held that voluntary testimony from a witness, whose identity was discovered by police as a result of a pre-*Miranda* interrogation which did not conform to the *Miranda* guidelines, could be used as evidence in a post-*Miranda* trial. Justice Rehnquist suggested in *dicta* in *Tucker,* and the Tenth Circuit in *Crocker* argues, that the totality of the circumstances adopted by both the federal and the Indiana voluntariness statutes may be a proper test in a post-*Miranda* confession. Both Rehnquist in *Tucker* and the Tenth Circuit in *Crocker* emphasize that the procedural safeguards of *Miranda* were merely suggested means of protecting an accused's Fifth Amendment rights, and that those rights may be protected by something less than full compliance with the procedure set out in *Miranda. But see:* Douglas, J., dissent, *Michigan v. Tucker,* 417 U.S. 461, 94 S.Ct. 2357.

The Supreme Court in *Tucker,* however, specifically limited its holding to the use of third-party evidence derived from a pre-*Miranda* statement in a post-*Miranda* trial, emphasizing several times that defendant's *own* statements had been properly excluded. 417 U.S. at 448, 449, 94 S.Ct. 2357. In the instant case, Mulry and Trusley's own statements were used, over their objection, as direct evidence in the State's case-in-chief. This *Miranda* will not allow.

4. Although IC 35–3.1–1–11 [Burns Code Ed. 1979 Repl.] provides a remedy when a co-defendant has made an out-of-court statement referring to the moving defendant, including severance of trials, Mulry and Trusley did not request any such remedy, but, in fact, requested a joint trial.

cause of improperly admitted evidence, requires that we address the overall sufficiency of the evidence absent the evidence excluded on appeal.

The United States Supreme Court has held that when an appellate court reverses a conviction "solely for lack of sufficient evidence," double jeopardy precludes granting a second trial to afford the prosecution another opportunity "to supply evidence which it failed to muster in the first proceeding." *Burks v. United States,* (1978) 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1. In so holding, the Supreme Court distinguished reversals because of evidentiary insufficiency from reversals because of trial error, the latter involving a determination that defendant has been convicted "through a judicial process which is defective in some fundamental respect." *Id.,* at 15, 98 S.Ct. at 2149. When a trial error has occurred, the Supreme Court reasoned both the State and defendant have a legitimate interest in obtaining a fair readjudication of guilt free from error.

The Supreme Court in *Burks* did not, however, address the issue of whether double jeopardy precludes a second trial when the insufficiency of evidence, as here, is created by our determination on appeal that certain evidence was not admissible.[5] Cases confronting this issue since *Burks* have held that *Burks* applies only when the entire record as submitted to the trier-of-fact is deemed insufficient to establish guilt. *See: United States v. Mandel,* (4th Cir. 1979) 591 F.2d 1347; *State v. Frazier,* (1979) W.Va., 252 S.E.2d 39.

■ In *Mandel,* the Fourth Circuit Court of Appeals held absent an "extraordinary case" an appellate court should not be required to determine the sufficiency of the evidence when presented with a reversible procedural error. The Court reasoned that

to decide the evidentiary sufficiency under these circumstances would invade the province of the trier-of-fact. Further, the Court noted, it is impossible to determine what other evidence the government might have produced had the faulty evidence not been admitted. 591 F.2d 1374.

Therefore, in accord with *Burks* and its later application, we reverse and remand Mulry's conviction for a new trial based on our finding of reversible trial error without reaching the issue of the sufficiency of the remaining evidence. *Accord, Irons v. State,* (1979) Ind., 397 N.E.2d 603 (Ind.1979); *But see Udchitz v. State,* (1979) Ind.App., 398 N.E.2d 688.

■ With respect to Trusley, however, we find that error in admitting his incriminating response was harmless. His admission, when weighed against the remaining properly admitted evidence, had little or no probative value. Absent his response, the evidence is more than sufficient to support a finding of guilt—his involvement in a similar offense within the same hour; the fact that he was bleeding as he approached the Nora Theater, and the later matching of his blood group with that found at the Woodland Theater; and Mulry's admission that he and Trusley had just left the Carmel theater location. Trusley's response to Mulry's admission was, at most, cumulative of the other incriminating evidence.[6]

## SUFFICIENCY OF THE EVIDENCE AS TO TRUSLEY

Trusley challenges the sufficiency of the evidence to establish his identity as the perpetrator of the Woodland offense and to establish the requisite unlawful intent.

■ Because the evidence is circumstantial, Trusley urges that it must exclude every reasonable hypothesis of innocence. Our Supreme Court has held, however, that

---

5. This issue was specifically reserved in *Greene v. Massey,* (1978) 437 U.S. 19, 25, 98 S.Ct. 2151, 57 L.Ed.2d 15.

6. The remaining evidence against Trusley meets the overwhelming-evidence test because of the weight of Mulry's statement they had just left the Carmel theater location. There-

fore, to hold Mulry's comaraderie with Trusley, together with the evidence placing Trusley at Woodland, also places *Mulry* at Woodland would be using Mulry's admission indirectly against him in order to find error in admitting his statement harmless.

the standard for reviewing the sufficiency of circumstantial evidence is the same as in all other challenges to the sufficiency of the evidence—whether there is substantial evidence of probative value to support each material element of the crime. *Ruetz v. State,* (1978) Ind., 373 N.E.2d 152, 156; *Smithers v. State,* (1979) Ind.App., 385 N.E.2d 466, 467.

A review of the evidence favorable to the decision of the trier-of-fact supports a reasonable inference that Trusley maliciously trespassed upon the premises of the Woodland Theater.

■ Trusley's perpetration of the Nora offense was linked to the Woodland offense by showing a common scheme or plan. At the Nora Theater Trusley was observed inflicting the same type of damage as was inflicted upon the Woodland Theater. Trusley was bleeding before he began smashing the windows at the Nora Theater and his blood group was matched with fresh blood found at the Woodland. Further, Mulry admitted that he and Trusley had just left the Carmel theater location.

Trusley's deliberate conduct was sufficient to support a finding of wrongful, intentional conduct required of Malicious Trespass. *Barber v. State,* (1927) 199 Ind. 146, 149, 155 N.E. 819, 820; *Baldock v. State,* (1978) Ind.App., 379 N.E.2d 539, 540.

We therefore affirm Trusley's conviction and reverse Mulry's conviction, remanding it for a new trial.

SULLIVAN, J., concurs.

BUCHANAN, C. J., dissents with opinion.

BUCHANAN, Chief Judge, dissenting.

I agree with the majority opinion to the extent it affirms the conviction of Trusley, but must respectfully dissent to the reversing of Mulry's conviction. I do so on three grounds:

 I. There is no allegation of error that Mulry was not given all his *Miranda* rights.

 II. There is evidence to support the conclusion that *all* the *Miranda* rights were given.

 III. A voluntary waiver occurred before Mulry's statement was made and there was sufficient evidence to support Mulry's conviction.

## I.

The majority raises sua sponte the question of whether these Defendants were given all their *Miranda* rights. At no point during the trial, in the objection in the motion to correct errors, or on appeal has either defendant complained that he was not given all of his *Miranda* rights. Thus the majority creates an issue which does not exist in this case.

## II.

In my opinion there is evidence or reasonable inferences therefrom that all the *Miranda* rights were given. The record discloses the following questioning of police officer Fleenor:

PROSECUTOR: Would you tell the court what rights you advised them of?

FLEENOR: *I advised them of their Miranda Rights.*

Q: And what are those.

A: Your right to counsel before questioning

THE COURT: Anything else?

THE WITNESS: I have a card I usually use that I read off sir.

Q: Did you read that card?

A: Yes I did.

Q: Would you please read that into the record. The card that is commonly put out by the police stations.

A: Yes the card that we have I obtained several from Marion County Sheriff's Department, which were issued on the back they had an advertisement I think for Bank Americard.

Q: Did you advise the defendants that they had a right to remain silent?

A: Yes

Q: They didn't have to talk to you.

MR. ALDEN: Your Honor I'll object to this line of questioning.

MR. NATION: Your Honor I'm trying to establish here the police officer has said that he has advised them of their *Miranda* Rights. The officer at this point ah I'm just trying to refresh his memory.

THE COURT: The objection is sustained as to the question as phrased. If you want to refresh his memory, there's a way to do that.

Q: Officer can you look at that and tell me what that is?

A: The rights.

Q: And would you please review that card. Now is that substantially the same rights or is that the same phrasing that you read to him on the night in question?

A: Yes it is.

Q: Would you please look at that and review it. Have you refreshed your memory at this point as to what rights you had given the defendants?

A: Yes

Q: At this time I ask you again what rights did you advise them?

A: I advised them that they had the right to counsel before any questioning, the right to stop answering at any time that they wished, the right to an attorney to be appointed for them by the State if they could not afford one for Court.

Q: Did you advise them of any other rights? You have already stated that you advised them that they had the right to remain silent.

A: I advised them they had the right to stop answering questions or not to answer questions at any time.

Q: After you advised them of these rights, did the defendants make any statements?

A: Not at that time, no.

Q: Did they make any statements at any time after the arrest?

MR. ALDEN: I object to that and ask permission to ask a preliminary question.

THE COURT: You may.

PRELIMINARY QUESTIONS

BY ROBERT F. ALDEN, ESQ.

Q: Did you advise them of anything else regarding what you term *Miranda* Rights other than what you must testified to? Absolutely none at all. Is that right?

MR. ALDEN: Then I would object. He said yes? They did make a statement.

Q: What was the substance of the statement?

MR. ALDEN: I'll object to any statement that might have been made to the officer on the grounds that it was not proper.

THE COURT: In what regard, counsel?

MR. ALDEN: Not only do the *Miranda* warnings statement have to be made to the defendants, but there has to be a showing that the defendants understand what the ah statements mean. And there is case law to the effect not only do they have to waive their rights, state that they want to waive their *Miranda* rights, but they have to understand their *Miranda* rights in order to waive them. The officer never mentioned what he just testified to under oath, do you understand these rights and understanding these rights do you want to waive these rights. They were not properly adivsed (sic) of the *Miranda* warning.

The record indicates to me that the officer informed the defendants of all their *Miranda* rights from a standard printed card at the time of their arrest. The fact that the officer apparently omitted one right when reciting them from memory does not necessarily mean the defendants were not informed that the statements they might make could be used against them. The officer's testimony that he read the *Miranda* rights from a card is sufficient evidence to support the trial court's finding that the *Miranda* rights were given. Consequently there is no need to address the question whether the last sentence of *Ind. Code* 35–5–5–2 dictates a different standard

for determining voluntariness than that given in the *Miranda* decision.[1]

### III.

Satisfied that there was evidence to support the conclusion that all the *Miranda* rights were given, I also conclude that the damaging statement made by Mulry occurred after a knowing and intelligent waiver on his part.

Following the giving of these rights, the defendants each made statements. The record discloses that in response to the question "[w]hat was the substance of the statement?" Officer Fleenor responded:

A: The statements were made, the first statement was made by Mr. Mulry in the rear seat of my vehicle along with the other officers, who are not present from another county. We were talking in terms of the damages done there and I asked the questions had they been to the Carmel Theater location. Mulry said they had just left there and got about three-fourths of the way up there, and was then bumped with the arm by Mr. Trusley.

Q: And what did he say?

A: He told him to be quiet.

Q: And approximately what time of night was this?

A: It was approximately ah 3:45 A.M. at that time.

Q: Now did ah were there any other statements made by Mr. Trusley?

A: He made the statement several times that they had made a mistake and got caught this time. They also made a statement that the next time the building wouldn't be standing.

Q: Did Mr. Trusley ever make a statement that he was ever in Carmel?

A: Yes

Q: Did he ever make a statement that he even knew where Carmel was?

A: Yes he did.

Q: Did you examine the automobile?

A: Yes I did.

Q: Was there any blood in that car?

A: Yes there was.

Q: Where at?

A: On the passenger's side of the vehicle.

Q: And uh who did you say you observed driving that vehicle?

A: Mr. Mulry was driving the vehicle.

Q: Who was on the passenger's side?

A: Mr. Trusley.

This evidence indicates these statements were made by both defendants, both voluntarily and in response to questions.

The United States Supreme Court has recently adopted the approach that it is permissible to find waiver even though no explicit affirmative waiver is made. *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). In *Butler* the Supreme Court explicitly rejected a per se rule that excluded statements of a criminal defendant who made neither a written nor explicit oral waiver of rights.

> The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. As was unequivocally said in *Miranda*, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated. [footnote omitted.]

*Id.*, at 373, 99 S.Ct. at 1757.

Instead, the question of waiver is to be determined on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst* (1938), 304

---

1. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (as quoted in *Butler*, 441 U.S. at 374, 99 S.Ct. at 1758).

In *United States v. Hayes* (1967, 4th Cir.) 385 F.2d 375, the Federal Court allowed admission of a confession although the defendant made no oral or written statement that he understood his rights and wished to waive them, because the evidence indicated the defendant was mentally alert, was given his *Miranda* rights, and appeared to comprehend them.

Mulry apparently made no explicit affirmative waiver of these rights, however, I cannot agree that the trial court erred when it concluded that Mulry did receive, comprehend and waive his rights before making his implicating response.

Furthermore, there is sufficient evidence to sustain Mulry's conviction even if his statement that they had just come from the Woodland theater was not admissible. I disagree with the majority's conclusion that the evidence totally fails to link Mulry to the Woodland offense. In the excerpt from the transcript quoted above, the officer testified that Trusley made the statement several times "*that they had made a mistake and got caught this time.*"[2] He further testified, "*[t]hey also made a statement that the next time the building wouldn't be standing.*" (emphasis supplied) From this testimony and the fact that both incidents occurred between 3:00 a. m. and 4:00 a. m., the trial court could reasonably infer that *they*, both defendants, had within the hour participated together in similar destructive activity at both the Nora and the Woodland theaters. Also, the officer testified that *Mulry* was the driver of the car that night. As Mulry drove the car into the Nora plaza, he turned the lights off and drove the car from one end of the parking lot to the front of the Nora theater at the other end. Blood was found only on the passenger side of this vehicle. Trusley, with a badly cut hand, rode on the passenger side. From this the trial court could reasonably infer that Mulry had driven Trusley from the location (Woodland Theater) where he had cut his hand and where it had dripped blood. So, exclusive of Mulry's statement that they had just come from the Woodland Theater, substantial evidence and the reasonable inferences flowing therefrom support the trial court's conclusion that Mulry was an accomplice to the destruction at the Woodland Theater, as well as at the Nora Theater that night.

Both convictions should be affirmed.

---

2. See the majority opinion for the use of a co-defendant's statements.